

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2001

# Southco Inc v. Kanebridge Corp

Precedential or Non-Precedential:

Docket 00-1102

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

## Recommended Citation

"Southco Inc v. Kanebridge Corp" (2001). *2001 Decisions*. Paper 162.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/162

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 20, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1102

SOUTHCO, INC.

v.

KANEBRIDGE CORPORATION,

     Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 99-cv-04337)
District Court Judge: Norma L. Shapiro

Argued: September 13, 2000

Before: SLOVITER, SCIRICA and ALITO, Circuit  Judges

(Filed July 20, 2001)

       STEVEN B. POKOTILOW (Argued)
       IAN G. DIBERNARDO
       KIERSTEN M. SKOG
       Stroock, Stroock & Lavan, LLP
       180 Maiden Lane
       New York, NY 10038

       STANLEY H. COHEN
       Caesar, Rivise, Bernstein, Cohen &
       Pokotilow, Ltd.
       1635 Market Street
       Seven Penn Center, 12th Floor
       Philadelphia, PA 19103

       Counsel for Appellant

JOEL I. KLEIN
 Assistant Attorney General
A. DOUGLAS MELAMED
 Deputy Assistant Attorney General
CATHERINE G. O'SULLIVAN
DAVID SEIDMAN (Argued)
U.S. Department of Justice
601 D Street, N.W.
Washington, DC 20530

ALBIN F. DROST
 Acting Solicitor
JUSTIN HUGHES
JOHN M. WHEALAN
United States Patent & Trademark
 Office
Arlington, VA 22215

DAVID O. CARSON
JESSE M. FEDER
STEVEN M. TEPP
United States Copyright Office
Washington, DC 20540

Counsel for Amicus Curiae in Support
of Appellants

MALLA POLLACK
Northern Illinois University College
of Law
Normal Road
DeKalb, IL 60115

Counsel for Amicus Curiae in Support
of Appellants

JAMES C. McCONNON (Argued)
ALEX R. SLUZAS
Paul & Paul
2000 Market Street
Suite 2900
Philadelphia, PA 19103

Counsel for Appellees

2

OPINION OF THE COURT

ALITO, Circuit Judge:

Kanebridge Corporation ("Kanebridge") appeals the
District Court's order granting a preliminary injunction in
favor of Southco, Inc. ("Southco"). Because wefind that
Southco's part numbers are not entitled to copyright
protection, we reverse the District Court's order.

I.

Southco manufactures various types of captive screw
fasteners, devices used in assembling the panels of items
such as computers and telecommunications equipment. 1
Important characteristics that distinguish among the huge
variety of fasteners include their length, thread size, finish,
recess type, installation type, screw diameter, and
composition. To assist its employees and customers in
identifying and distinguishing among its products, Southco
developed a numbering system to serve as a shorthand
description of the relevant characteristics of each fastener.
Under this system, each fastener is assigned a unique nine-
digit number, with each digit describing a specific physical
parameter of the fastener.2 Southco includes these numbers

_____

1. Southco describes these fasteners as follows:"Captive screws are used
to fasten panels together. Each captive screw comprises a screw, a
ferrule and a knob. A set of screws will be mounted in one panel by
means of the ferrule and the other panel contains an internally threaded
insert which receives the screw." Appellee's Brief at 6-7.

2. Southco's brief illustrated how its numbering system works by
including the following description of part numbers 47-10-202-10 and
47-11-202-10:

        47-10-202-10

        The first two digits ("47") refer to Southco's line of captive
fasteners,
        as opposed to other Southco product lines. The next two digits
("10")
        refer to an English thread with either a flare orfloating style
ferrule
        with a specific screw projection. In particular, the specific
digits
        ("10") indicate that the screw is so short that it does not project

3

in various Handbooks it publishes each year.3 Anyone who is familiar with Southco's system should be able to determine all of the relevant features of a particular screw from its part number alone. This numbering system has become an industry standard, and the part numbers produced by the system are the subject of this copyright infringement suit.

Matdan America ("Matdan") is a competing manufacturer of panel fasteners. Kanebridge, known as Matdan's"master distributor," sells Matdan fasteners to other distributors, often at prices lower than Southco's. Because Southco's numbering system has become an industry standard, many

_____

outside the ferrule when the installed captive fastener is in the unfastened state. In the next series of digits ("202"), the first digit ("2") refers to the specific thread size ("632"). The next digit ("0") indicates a slotted recess on top of the screw. The next digit ("2") refers to the grip length of that flange, where the parts attach to the panel. In this case, the "2" indicates that the flange grip length is appropriate for panel with a thickness from 0.058 inches and 0.125 inches. In the last two digits, the first digit ("1") indicates the type of material that the ferrule is made out of (aluminum) and that the knob has a natural finish. The last digit ("0") indicates whether the knob is knurled or smooth. The "0" indicates that the knob is knurled.

47-11-202-10

This number signifies a captive fastener that is identical, except that the second pair of digits ("11") refer to an English thread with a flare or floating style ferrule with a different screw projection. In this case the screw is long enough to project from the ferrule even when the captive fastener is unfastened.

3. Southco obtained copyright registrations for these Handbooks, but the registrations do not refer to the part numbers. In addition to the part numbers, the Handbooks contain, among other things, short descriptions and drawings of the various products. The parties do not appear to dispute that the Handbooks are entitled to copyright protection, and it is well-established that compilations can be

copyrighted, assuming that the compiler "make[s] the selection or arrangement independently (i.e. without copying that selection or arrangement from another work), and that it display some minimal level of creativity." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340,
358 (1991).

4

of Kanebridge's customers often specify suitable fasteners by reference to Southco's part numbers. Recognizing this fact, Kanebridge began using Southco's part numbers in comparison charts that were included in advertisements and other literature that it provides to customers. These charts display Kanebridge's and Southco's numbers for equivalent fasteners in adjacent columns, making it clear that these parts are interchangeable.4  According to Kanebridge, the "ability to cross-reference Southco panel fasteners in an honest, accurate and comparative manner" is necessary to make competition viable. Appellant's Brief at 7. Without this ability, customers would lose the opportunity to obtain lower-cost alternative fasteners. Id.

Southco commenced this action against Kanebridge asserting, among other claims, a claim for copyright infringement. The parties agreed to a temporary restraining order ("TRO") containing various restrictions on Kanebridge's use of Southco's part numbers. They also agreed to enter into a preliminary injunction on consent but were unable to agree on its scope. Southco then moved for a preliminary injunction of the same scope as the TRO, and after a hearing, the District Court issued an order granting Southco's motion. Kanebridge is appealing this order.

II.

The decision whether to enter a preliminary injunction is committed to the sound discretion of the trial court and will be reversed "only if the court abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof." Loretangeli v. Critelli, 853 F.2d 186, 193 (3d Cir. 1988); see also Times Mirror Magazines, Inc. v. Las Vegas Sporting News, L.L.C., 212 F.3d 157, 160–61 (3d Cir. 2000). Although the scope of our review is limited, "any determination that is a prerequisite to the issuance of an injunction . . . is reviewed according to the standard applicable to that particular

_____

4. Southco claims that Matdan's fasteners, although interchangeable with its own, are of inferior quality. Whether or not this is true, however,
is irrelevant to the present appeal.

determination." American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (quoting John F. Harkins Co., Inc. v. Waldinger Corp., 796 F.2d 657, 658 (3d Cir. 1986)). Therefore, "we exercise plenary review over the District Court's conclusions of law and its application of the law to the facts." Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd., 40 F.3d 1431, 1438 (3d Cir. 1994); see also Marco v. Accent Publ'g Co. , 969 F.2d 1547, 1548 (3d Cir. 1992).

III.

Kanebridge challenges the District Court's grant of a preliminary injunction on two separate grounds. First, it argues that Southco's part numbers fail to satisfy the requirements for copyright protection. Kanebridge gives three reasons to support this argument: the part numbers' lack of sufficient originality, the scenes a faire doctrine, and the merger doctrine. Second, Kanebridge argues that, even if the part numbers are protected, its use of the numbers satisfies the requirements for fair use. Because we conclude that these numbers fail to satisfy the originality requirement, we do not reach any of the other arguments.

A.

Copyright protection is available for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. S 102(a) (emphasis added). The Supreme Court has held that, in order to satisfy the originality requirement, a work must have been "independently created by the author" and must possess "at least some minimal degree of creativity." Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345 (1991). Although the Court has noted that this is not a "stringent" standard, it has also held that there is "a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." Id. at 358-59. We conclude that Southco's part numbers fit within this "narrow category" of works that are incapable of sustaining a valid copyright. Id.

At the outset, we must determine exactly what work Southco claims is entitled to copyright protection. There are

6

three possibilities: (1) the numbering system, (2) the actual part numbers, and (3) both the system and the numbers. The District Court apparently did not distinguish among these three options. Although it framed the issue as "whether Kanebridge may use Southco numbers in comparison charts," the Court's analysis repeatedly referred to the "Numbering System." Southco, Inc. v. Kanebridge Corp., No. CIV. A. 99-4337, 2000 WL 21257, at *2 (E.D.Pa. Jan. 12, 2000) (emphasis added). For example, when discussing the originality requirement, the Court stated: "The Numbering System is sufficiently original for copyright protection." Id. at 3 (emphasis added). For purposes of copyright law, however, Southco's numbering system itself and the actual numbers produced by the system are two very different works.[5]

Southco has not alleged that Kanebridge improperly used its numbering system. Instead, it alleges that Kanebridge infringed its copyright in the actual part numbers. This case does not involve Kanebridge's creation of a new fastener and its use of the Southco numbering system to assign that part a part number. That hypothetical situation would raise issues not present in this appeal.[6] We believe

_____

5. As the amicus brief submitted on behalf of the United States Patent & Trademark Office aptly notes:

> The district's court's originality analysis addressed the originality
> not of the 51 nine-digit numbers Southco alleged Kanebridge to
> have copied, but rather of the "Numbering System." . . . The court
> found that system to be original and protected by Southco's
> registered copyrights. Whatever the merits of thosefindings, they do
> not compel, nor even suggest, a conclusion that the parts numbers
> are protected by copyright.

Amicus Brief of the United States at 14.

6. For example, the United States raises the question whether the system amounts to a set of abstract rules that is ineligible for copyright protection under 17 U.S.C. 102(b). Amicus Br. For the United States at 14 n.12. We express no opinion on this issue. However, we do point out that, in response to questions at oral argument, Southco's attorney conceded that the system itself is not eligible for copyright protection. This issue does not affect the outcome of this case.

that, given Southco's allegations, the proper focus of our analysis must be on the actual part numbers.7

B.

To satisfy the originality requirement, Southco's part numbers must "display some minimal level of creativity." See Feist, 499 U.S. at 358. Although the originality requirement is not demanding, it nevertheless is a prerequisite for copyright protection since copyright protection is available only for "original works of authorship." 17 U.S.C. S 102(a) (emphasis added); see also Feist, 499 U.S. at 345 ("The sine qua non of copyright is originality."). Indeed, "[o]riginality is a constitutional requirement." Feist, 499 U.S. at 346. We conclude that the creative spark is utterly lacking in Southco's part numbers and that these numbers are examples of works that fall short of the minimal level of creativity required for copyright protection.

Although the District Court reached the opposite conclusion, its own words demonstrate that Southco's part numbers are completely devoid of originality and instead result from the mechanical application of the numbering system. As the District Court stated,

> Southco uses product numbers that convey specific
> properties of the products manufactured. The numbers
> are not assigned at random or in sequence; they are
> assigned based on the properties of the parts. The
> Numbering System is a complex code expressing
> numerous detailed features of Southco hardware

_____

7. An analogy to patent law may be helpful to illustrate the importance of this distinction. If someone obtains a process patent for a machine that manufactures widgets, that person has a monopoly in the rights to the machine. However, unless the widgets themselves also satisfy the requirements for patent protection and the application contains claims related to the widgets, that person will have no patent rights in the widgets and will not succeed in an infringement suit against someone who produces identical widgets through a process that does not infringe the patent for the machine. His/her patent rights will be limited to the machine that produces the widgets. See United States v. Studiengesellschaft Kohle, 670 F.2d 1122, 1127–28 (D.C. Cir. 1981).

products; each part number tells the story of a part's size, finish, and utility. Southco does not make random and arbitrary use of numbers; Southco assigns numbers based on a system designed over twenty years ago and refined ever since.

Southco, 2000 WL 21257, at *4. Southco also acknowledges this fact in its brief by stating that its system"is made up of nine-digit part numbers in which the first two numbers denote the type of fastener and the remaining digits denote functional characteristics of each type, such as installation type, thread size, recess type, grip length, type of material, and knob finish." Appellee's Brief at 7. Southco also refers to its system as a "code which communicates details of the hardware." Id.

Southco unquestionably devoted time, effort, and thought to the creation of the numbering system, but Southco's system makes it impossible for the numbers themselves to be original. Under that system, there is simply no room for creativity when assigning a number to a new panel fastener. The part has certain relevant characteristics, and the numbering system specifies certain numbers for each of those characteristics. As a result, there is only one possible part number for any new panel fastener that Southco creates. This number results from the mechanical application of the system, not creative thought. If Southco were to develop a new fastener and for some reason decide to exercise creativity when assigning it a number, the resulting part number would fail to accomplish its purpose. Regardless of how small the change is, customers could not effectively identify the relevant characteristics of the panel fastener by simply looking at its part number.

C.

The District Court devoted significant attention to two decisions from other circuits, and the parties' briefs take the same approach. These decisions, Toro Co. v. R&R Products Co., 787 F.2d 1208 (8th Cir. 1986), and Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366 (10th Cir. 1997), are of course not binding on this Court, and neither directly addresses the precise ground on which our current decision is based.

9

In Toro, the Eighth Circuit held that a lawn care machine manufacturer's part numbering system lacked sufficient originality for copyright protection. See Toro , 787 F.2d at 1213. The manufacturer arbitrarily assigned a random sequential number to each new part it created and offered no evidence that the numbers used were intended to encode any information. See id. The Court stated: "The random and arbitrary use of numbers in the public domain does not evince enough originality to distinguish authorship." Id. In dicta, however, the Court went on to say:

> This is not to say that all parts numbering systems are not copyrightable. A system that uses symbols in some sort of meaningful pattern, something by which one could distinguish effort or content, would be an original work.

Id. Both Southco and the District Court have seized on this dicta and argued that Toro supports a finding of copyrightability for Southco's part numbers since those numbers are not randomly assigned.

We agree with Kanebridge that reliance on Toro  is unfounded. For one thing, the Toro Court, in analyzing the issue of originality, invoked the "sweat of the brow" theory, under which courts considered the amount of effort expended by an "author" in assessing whether a work was original. See 787 F.2d at 1213 (relying on Hutchinson Tel. Co. v. Frontier Directory Co., 770 F.2d 128 (8th Cir. 1985)). The Toro Court relied, at least in part, on this theory in making the statement on which Southco and the District Court have relied. See 787 F.2d at 1213 ("A system that uses symbols in some sort of meaningful pattern, something by which one could distinguish effort  or content, would be an original work.")(emphasis added). However, the Supreme Court has clearly rejected the "sweat of the brow" theory. See Feist, 499 U.S. at 352-61 ("Without a doubt, the `sweat of the brow' doctrine flouted basic copyright principles."). In addition, Toro stated only that a parts numbering "system" that used symbols in a meaningful pattern would be original. 787 F.2d at 1213. Here, as we have emphasized, the issue is not the originality of Southco's system but of its parts numbers themselves. For

10

these reasons, we do not believe that Toro supports a
finding of copyrightability in this case.

The Tenth Circuit's decision in Mitel likewise does not
support Southco's argument. The Mitel Court addressed the
issue of copyrightability of four-digit computer codes used
to operate telecommunications equipment.8  The Court first
held that the four digits making up these codes themselves
-- the "registers" (the first three digits) and "descriptions"
(the fourth digit) – were not original and therefore not
copyrightable. These numbers were arbitrarily chosen and
largely sequential, and the Court concluded that" `the
random and arbitrary use of numbers in the public domain
does not evince enough originality to distinguish
authorship.' " 124 F.3d at 1374 (quoting District Court).
However, the Court reached a different conclusion with
respect to the "values" assigned to the "descriptions." Id. at
1374. One such "value" that the Court described concerned
the appropriate response "upon the failure of a call sent
over a particular telephone network route." Id. "The
possible values for th[is] function include[d] several
combinations of redialing over another route or
reattempting the call over the same route again before
trying another route." Id. The Tenth Circuit held that Mitel's
values reveal `the existence of . . . intellectual production,
of thought, and conception.' " Id. (quoting Feist, 499 U.S. at
362). The Court stated that Mitel employees satisfied the
`minimal degree of creativity' requirement by"devis[ing]

_____

8. Kanebridge accurately and succinctly described the command codes
that were at issue in Mitel as follows:

> The four-digit codes included a "register", consisting of the first
> three digits, and a "description", consisting of the last digit.
Each
> three-digit register identified a particular function. Particular
> numbers in the description digit corresponded to certain "values"
> pertaining to the function identified by the register. For example,
> register "X27" identified the function "Time to Auto Answer",
wherein
> X indicated the number of the telephone line for which the function
> would be activated. With regard to the description, a "4" stood for
> the value of "40 seconds" for the "Time to Auto Answer" function.
> Other values for this function denoted other time durations. For
> other functions, values represented various baud rates.

Kanebridge's Brief at 31-32.

appropriate values for the wide variety of individual functions." Id. Despite this finding of originality, the court denied copyright protection to these values under the scenes a faire doctrine.

The District Court, without any explanation, declared that "Southco's Numbering System is original under this portion of the Mitel analysis." This reliance on Mitel, however, was misplaced.[9] We agree with Kanebridge that the values in Mitel are not analogous to the part numbers in this case. Instead, they are more closely analogous to the physical specifications of the parts. For example, the number "4" as a description in one of the codes in Mitel stood for the value of "40 seconds." This is simply an operational parameter. The number "4" just as easily could have stood for values of "4 seconds," "44 seconds," "83 seconds," or any other amount of time. It was in making this decision that the value should be "40 seconds" that the Mitel employees exercised creativity. At best, this would be analogous to Southco's choosing the length to make a particular fastener. For example, it would be analogous to Southco's deciding between making a particular fastener 200 millimeters or 300 millimeters in length. This is not the same as deciding that the number "2" in its numbering system should represent a fastener that is 632 millimeters. For this reason, we do not believe that Mitel supports a finding of copyrightability in this case.

Finally, we believe that it is important to address a third case that the District Court and the parties have not discussed. In American Dental Association v. Delta Dental Plans Association, 126 F.3d 977 (7th Cir. 1997), the Seventh Circuit held that a "taxonomy" used by the American Dental Association ("ADA") was copyrightable. This taxonomy classified various dental procedures into groups and assigned to each procedure a five-digit number,

_____

9. In its brief, Southco stated, "The values in Mitel were found to be copyrightable however, even though single digits, because they were established according to a system." Appellee's Brief at 19-20. The Mitel Court reached no such holding and did not refer to the values being established according to a system when concluding that they satisfied the originality requirement. Therefore, we disagree with Southco's characterization of the court's holding.

12

a short description, and a long description.[10] See id. at 977. This taxonomy was used to create the "Code on Dental Procedures and Nomenclature," a compilation of all of the potentially billable dental procedures. Delta, a corporation that provides and administers various member dental care service plans, published its own book entitled "Universal Coding and Nomenclature." This book included most of the numbering system and short descriptions from the ADA's Code. See id. The District Court held that the ADA's taxonomy was not copyrightable.

In reversing the District Court, the Seventh Circuitfirst expressed concern that the District Court's decision was so sweeping that it would remove copyright protection from many other well-established "taxonomies," such as the West Key Number System and the manuals issued by the Financial Accounting Standards Board to specify generally accepted accounting practices. See id. at 978. The Court went on to hold that the ADA's taxonomy was entitled to copyright protection. See id. at 979. The Court observed:

> Facts do not supply their own principles of organization. Classification is a creative endeavor. Butterflies may be grouped by their wings, or their feeding or breeding habits, or their habitats, or the attributes of their caterpillars, or the sequence of their DNA; each scheme of classification could be expressed in multiple ways. Dental procedures could be classified by complexity, or by the tools necessary to perform them, or by the parts of the mouth involved, or by the anesthesia employed, or in any of a dozen different ways.

Id. The court added:

> Creativity marks the expression even after the fundamental scheme has been devised. This is clear enough for the long description of each procedure in the ADA's Code. The long description is part of the copyrighted work, and original long descriptions make

_____

10. For example, the number 04267 is assigned to the short description "guided tissue regeneration -- nonresorbable barrier, per site, per tooth (includes membrane removal)." American Dental Ass'n, 126 F.3d at 977.

13

>          the work as a whole copyrightable. But we think that
>          even the short description and the number are original
>          works of authorship.

Id.

We believe that there are important distinctions between
American Dental and the present case. The long and short
descriptions of the various dental procedures are obviously
very different from the part numbers at issue in the present
case, and therefore the Seventh Circuit's decision that
these descriptions are copyrightable has no application
here. Moreover, even the numbers assigned to the
procedures appear to be quite different. These numbers
were not chosen randomly, as were the numbers in Toro or
the computer codes in Mitel, and they were not the
mechanical results of a numbering system, as are the part
numbers in question in this case. Rather, the numbers in
American Dental reflected creative thought. The entries in
the ADA's Code were originally developed by a committee
comprised of representatives from interested organizations.
See American Dental Ass'n v. Delta Dental Plans Ass'n, No.
92-C-5909, 1996 WL 224494, at *2-3 (N.D.Ill. May 1, 1996).
When new procedures were developed or other changes to
the system became necessary, this committee collected
written proposals submitted by state dental societies and
national dental organizations. The committee then debated,
edited, and voted on the proposals. See id. at *3. Although
the ADA eventually changed this process, the new process
still involved significant debate and editing of proposals by
this committee. See id. at *4.

Assigning a number to a particular dental procedure
reflects a decision about the distinctiveness and prevalence
of the procedure and its relationship to the other
procedures in the Code. Each number series in the Code
refers to a particular category of procedures. For example,
the 00100-00999 series refers to "Diagnostic" procedures,
and the 02000-2999 series refers to "restorative
procedures." And it appears that closely related procedures
are grouped within each series. For example, the 2100
series, which is grouped under the heading "Amalgam
Restorations (including polishing)," is as follows:

14

```
02110 amalgam - one surface, primary
02120 amalgam - two surfaces, primary
02130 amalgam - three surfaces, primary
02131 amalgam - four or more surfaces, primary
02140 amalgam - one surface, permanent
02150 amalgam - two surfaces, permanent
02160 amalgam - three surfaces, permanent
02161 amalgam - four or more surfaces, permanent
```

American Dental Association, Current Dental Terminology, at 10 (1st ed. 1990-1995). Thus, assigning a particular number to a particular procedure involved at least a modicum of creativity.

The ADA's system stands in stark contrast to Southco's. As previously discussed, Southco's system is highly mechanical and leaves no room for creativity. When a new fastener is created, there is only one possible part number. Assigning a particular number to the fastener does not involve any creativity or any choice about how the fastener should be classified. Accordingly, even if we were bound by American Dental, we would not regard it as controlling here.

In sum, we conclude that the District Court committed an error in holding that the Southco numbers satisfied the originality requirement of the Copyright Act. We hold that Southco has no likelihood of success in its infringement action and that the entry of the preliminary injunction in its favor was not proper. We therefore reverse the order of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15