

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2003

# Southco Inc v. Kanebridge Corp

Precedential or Non-Precedential: Precedential

Docket 02-1243

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Southco Inc v. Kanebridge Corp" (2003). *2003 Decisions.* Paper 675.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/675

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 26, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 02-1243

—————

SOUTHCO, INC.,

Appellant

v.

KANEBRIDGE CORPORATION

—————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 99-cv-04337)
District Judge: Honorable Norma L. Shapiro

—————

Argued on December 3, 2002

Before: ROTH, SMITH, and
CUDAHY,* *Circuit Judges*

(Opinion filed: March 26, 2003)

James C. McConnon, Esquire
 (Argued)
Alex R. Sluzas, Esquire
Paul & Paul
2000 Market Street, Suite 2900
Philadelphia, PA 19103

*Counsel for Appellant*

* The Honorable Richard D. Cudahy, Circuit Court Judge for the Seventh
Circuit, sitting by designation.

Stanley H. Cohen, Esquire
Caesar, Rivise, Bernstein
Cohen & Pokotilow
1635 Market Street
Seven Penn Center, 12th Floor
Philadelphia, PA 19103

Steven B. Pokotilow (Argued)
Stroock, Stroock & Lavan
180 Maiden Lane
New York, NY 10038

*Counsel for Apellee*

---

## OPINION OF THE COURT

ROTH, *Circuit Judge*:

In this appeal, we must determine to what extent a District Court is bound by a ruling by this Court on a prior appeal that had reversed the District Court's grant of a preliminary injunction.

The present appellant, Southco, Inc., filed a complaint alleging that Kanebridge Corp. had violated Southco's copyright and trademark, and engaged in unfair competition, by reprinting the product numbers Southco uses to describe its captive screw fasteners. Southco sought a preliminary injunction on its copyright cause of action, which the District Court granted. Kanebridge appealed and we reversed the preliminary injunction. We determined that Southco had not shown a likelihood of success on the merits because Southco's product numbers were mechanically dictated by its numbering system. On remand, the District Court granted Kanebridge's motion for summary judgment despite Southco's submission of a declaration from Robert H. Bisbing, the inventor of Southco's captive screw fasteners, who described the process by which he developed the product numbers for this new line of fasteners. The District Court held that it was bound by the prior panel's decision. Southco appealed. For the reasons stated below, we will reverse the judgment

of the District Court and remand this case to it for consideration of the Bisbing declaration.

## I.   Facts and Procedural History

Southco manufactures a variety of fasteners, rivets, latches, handles, and screws, including captive screws.[1] In order to assist its employees and customers in identifying and distinguishing among its products, Southco has developed a unique product numbering system that serves as a shorthand description of the relevant characteristics of every product and component manufactured by Southco. The product numbers are used not only in the ordering process but also in the manufacturing process to insure the precisely correct identification of each product and its components. In developing the number, Southco assigns nine-digits to each product, with each digit describing a specific physical characteristic of that product. Southco publishes these numbers in various Handbooks. Southco's numbering system has become the industry standard. As a result, Kanebridge, a distributor of competing captive screw fasteners, uses the system when taking orders from customers. To facilitate its customers' use of the numbers when ordering fasteners, Kanebridge began publishing Southco's numbers in advertisements and other publications.

On August 27, 1999, Southco filed a civil complaint in the United States District Court for the Eastern District of Pennsylvania, alleging copyright infringement in violation of 17 U.S.C. § 101 *et seq.*, trademark infringement in violation of 15 U.S.C. § 1114(1), unfair competition in violation of 15 U.S.C. § 1125(a), and common law trademark infringement and trademark dilution in violation of 54 Pa. C.S.A. § 1124. The parties agreed to a temporary restraining order. They also agreed to enter a preliminary injunction on consent

---

1. Captive screws are used to fasten panels together, as for instance in computers and telecommunications equipment. A captive screw consists of a screw, a ferrule, and a knob. The screw is mounted in one panel by means of the ferrule and the other panel contains an internally threaded insert that receives the screw. *See Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 149 and fn 1 (3d Cir. 2001) ("*Southco I*").

but were unable to agree on the scope of the injunction. Southco then filed a motion for a preliminary injunction based on its copyright cause of action. Following a one day hearing, the District Court granted the motion and enjoined Kanebridge from infringing Southco's copyright. Kanebridge appealed. *See Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148 (3d Cir. 2001) ("*Southco I*").

The *Southco I* panel held that Southco had no likelihood of success on the merits because its product numbers failed to satisfy the originality requirement. *Id.* at 151. In reaching this conclusion, the panel distinguished between the numbering system and the actual part numbers. The panel found that, while Southco exercised creativity and choice in developing the numbering system, it did not claim that Kanebridge improperly used the numbering system and the "part numbers are completely devoid of originality and instead result from the mechanical application of the numbering system." *Id.* at 152. Consequently, the *Southco I* panel reversed the order of the District Court granting Southco's motion for a preliminary injunction. *Id.* at 156.

On remand, Kanebridge filed a motion for summary judgment to dismiss the copyright infringement cause of action. In opposition, Southco submitted a declaration from Robert H. Bisbing, who has designed numerous fasteners for Southco and assigned them product numbers. In the declaration, Bisbing discussed his invention of a new type of captive screw, the enclosed retractable captive screw, and how he assigned a product number to his invention. Bisbing stated that, according to Southco practice, each new product is assigned a nine digit number. Each Southco product has values, unique to that product, which are physical characteristics related to the product and its use. The elements of the product number reflect certain of those values. In creating a product number, he will first decide upon the value or values to be represented in each of the four groups of the number. The groups are designated A through D. The first two digit group (A) identifies the product class; the second two digit group (B) identifies whether the product is an assembled product or a component part; the third three digit group (C) identifies variations among similar products; and the final two digit

group (D) identifies different materials and finishes among similar products. The procedure is flexible to allow for variations in the needs of particular products.

Turning to the assignment of a product number for the new enclosed retractable captive screw, Bisbing stated that, when he created the new captive screw in 1971, he chose the number 47 for the product class, even though captive screws already existed in product classes 12, 17, 51 and 53. He stated that he could not use any of the existing product classes for the new captive screw because the systems of product numbers in the existing classes identified particular values and characteristics pertinent to those products that would not be useful in the new product. He therefore had to determine the values and characteristics to be reflected in Groups B, C, and D and to create the numbers for them.

Turning to Group B, Bisbing stated that he used the first digit to designate whether the part was an assembly, sub-assembly, or a component because, due to the large number of values that the part numbers would have to express, he would need the second digit for other values. He assigned 1 to indicate assemblies with flare-in ferrules and 6 to indicate assemblies with press-in ferrules.[2] Bisbing decided to use the second digit in Group B to indicate how far the screw projected beyond the outer panel surface. Bisbing then assigned the first digit in Group C to indicate thread size, and the second and third digit in Group C to designate the range of panel thickness to which the ferrule was adapted.[3] Finally, for Group D, naturally finished aluminum was originally the only material or finish available. Thus, all enclosed retractable captive screws were assigned the number 10. However, Bisbing added other numbers as other finishes and materials became available. Bisbing concludes that he created these digits of the new

---

2. Bisbing assigned several other numbers for internal manufacturing operations. Thus, 2 indicates a ferrule, 3 indicates a spring, 4 indicates a knob, and 5 indicates a screw.

3. Only flared-in ferrules require this set of numbers. Thus, for press-in ferrules, where the first digit of group B is 6, the second and third digits of Group C are 01.

product number "in accordance with the then existing Southco part numbering procedure," and that:

> These numbers were not dictated by any numbering system. Not only each number as a whole, but each group of digits and each digit in each number was created by me based upon the specific products which I had created and my determination of the values of those products to be represented and the digits to be used. The part number for each new part was created on the basis of my decisions.

Despite the Bisbing declaration, the District Court granted Kanebridge's motion for summary judgment, rejecting Southco's argument that this new evidence, not before the *Southco I* panel, established the originality of the part numbers and their protectability. At argument on the motion for summary judgment, the District Judge expressed her strong disagreement with our ruling in *Southco I.* She went on to explain, however, that she was ruling against Southco on remand because the *Southco I* panel's ruling was "a decision on a matter of law." She concluded:

> In that circumstance, it's not just the entry of the preliminary injunction is improper, but any relief to you on your copyright claim I believe would subject me to contempt by the Court of Appeals.

In the Order, granting summary judgment to Kanebridge, the court held that Southco's "argument ignores the plain mandate of the Court of Appeals. Plaintiff's submission does not provide evidence of additional creativity that would satisfy that court." The District Court entered final judgment on December 27, 2001.[4] Plaintiff timely appealed.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it constitutes a civil action arising under the laws of the United States. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

4. The non-copyright claims were dismissed by stipulation of the parties.

We exercise plenary review over a grant of summary judgment. *Chisolm v. McManimon*, 275 F.3d 315, 321 (3d Cir. 2001). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986).

## III. Discussion

We conclude that the District Court erred when it concluded that the *Southco I* panel's decision precluded the District Court from considering the Bisbing declaration. Under the law of the case doctrine, "one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case. The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity." *In re City of Philadelphia Litig.*, 158 F.3d 711, 717-18 (3d Cir. 1998). The law of the case doctrine precludes review of only those legal issues that the prior panel actually decided, either expressly or by implication, so it does not apply to dictum. *See id.* at 718. Further, the doctrine does not restrict a court's power, but rather governs its exercise of discretion. *See id.* Therefore, the doctrine does not preclude reconsideration of previously decided issues in "extraordinary circumstances," such as where (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *Id.*

However, "while the law of the case doctrine bars courts from reconsidering matters actually decided, it does not prohibit courts from revisiting matters that are avowedly preliminary or tentative." *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) (quotation omitted). Preliminary injunctions are, by their nature, tentative and impermanent. *See R.R. Yardmasters of Am. v. Pennsylvania R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955). As the Supreme Court notes:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a

trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citation omitted).

In this case, because the only issue before the panel in *Southco I* was whether Southco was entitled to a preliminary injunction, the District Court erred in concluding that it was bound by *Southco I* to grant Kanebridge's motion for summary judgment. While the *Southco I* panel reviewed the likelihood of success on the merits of the "originality" claim, the panel did not address the distinct issue of whether Southco is actually entitled to succeed on the merits of the claim. In both *Council of Alternative Political Parties* and *ACLU of New Jersey v. Black Horse Pike Regional Board of Education*, 84 F.3d 1471, 1477 (3d Cir. 1996) (en banc), a District Court denied a preliminary injunction, and we reversed, ordering that the District Court enter a preliminary injunction. As in the present case, the District Court in both *Council of Alternative Political Parties* and *ACLU of New Jersey* entered summary judgment on the merits on remand, finding that it was bound by our decision on preliminary relief. However, as we stated in *ACLU of New Jersey*:

> The district court erred in concluding that it was so bound. The [prior] panel assessed the merits . . . under the standard for the granting of a *preliminary* injunction — a standard which differs from the standard for granting a permanent injunction. Its decision to grant a preliminary injunction was based on an assessment of the *likelihood* that plaintiffs would succeed on the merits, and neither constitutes nor substitutes for an actual finding that plaintiffs *have*

> succeeded on the merits and are entitled to permanent relief.

84 F.3d at 1477. That the first appellate panels in *Council of Alternative Political Parties* and *ACLU of New Jersey* found a likelihood of success on the merits, while the first panel in this case found no likelihood of success on the merits, does not alter this conclusion. In both cases, the first panel was dealing in probabilities of success and was not addressing the ultimate issue of whether the claim has merit.

The argument that an appellate decision regarding preliminary relief does not compel summary judgment on the merits is stronger in the present case than it was in *ACLU of New Jersey*. In *ACLU of New Jersey*, after we ordered the District Court to issue a preliminary injunction, the District Court entered a preliminary and a permanent injunction, finding that "[a]dditional hearings or new evidence might have put a different cast on the issues, but as the record has not been augmented since the motion for a preliminary injunction, we feel constrained to enter a final judgment in accordance with the Third Circuit's order . . . ." 84 F.3d at 1476. On the other hand, in the present case, Southco augmented the record on remand with additional evidence, namely the Bisbing declaration. This declaration raises a genuine issue of material fact that assigning product numbers to the enclosed retractable captive screw involved creativity and choice about how the fastener should be characterized, and thus that the product numbers are not mechanically derived from the numbering system. *See Southco I*, 258 F.3d at 156.

The District Court on remand concluded that it could not consider the Bisbing declaration because it was the same as the evidence that was before the *Southco I* panel, namely the testimony of Tom Demrick, the Southco Business Manager for Captive Hardware. However, the Bisbing declaration differs from Demrick's testimony because Demrick focused on how people *use* the product numbers to describe physical characteristics of a fastener, while Bisbing's declaration described how Southco inventors *created* the product numbers to represent what the inventor considered to be the important physical values and

characteristics of a new product. The only testimony from Demrick regarding the creation of the numbers for a particular product was as follows:

> Q. Now, when a new Captive screw is created by Southco, is it assigned an arbitrary, random part number?

> A. No, not at all. The — the scheme — this coding scheme is utilized and, possibly, expanded, but the same basic system is applied to new products.

This description is a far cry from Bisbing's detailed description of how he assigned a product number to the enclosed retractable captive fastener. Unlike Bisbing, Demrick does not explain how the system is applied to a new product, how it may be expanded, or how much choice an author has in developing product numbers.

The District Court also concluded that it could not consider the Bisbing declaration because it related to the creation of the numbering system rather than to the development of product numbers. The District Court considered that the *Southco I* panel came to a legal conclusion when it determined that Southco exercised no originality in developing the product numbers. For that reason, it determined that additional facts would not alter the outcome. However, the *Southco I* panel's conclusion regarding originality involved, at least in part, factual determinations regarding the process by which Southco developed numbers. The Bisbing declaration suggests that the panel's conclusions regarding the relationship between the numbering system and the product numbers has no basis in fact. Based on the limited evidence at the preliminary injunction phase, which focuses on the *use* of the product numbers, the *Southco I* panel concluded that the product numbers are mechanically dictated by a preexisting numbering system. The *Southco I* panel explained:

> Under [the numbering] system, there is simply no room for creativity when assigning a number to a new panel fastener. The part has certain relevant characteristics, and the numbering system specifies certain numbers for each of those characteristics. As a result, there is

only one possible part number for any new panel fastener that Southco creates. This number results from the mechanical application of the system, not creative thought. If Southco were to develop a new fastener and for some reason decide to exercise creativity when assigning it a number, the resulting part number would fail to accomplish its purpose. Regardless of how small the change is, customers could not effectively identify the relevant characteristics of the panel fastener by simply looking at its part number.

258 F.3d at 153.

The new evidence that Southco has submitted at the merits phase, however, calls into doubt the *Southco I* panel's factual conclusions about the process by which Southco assigns numbers to new fasteners. Bisbing's declaration does not indicate that the inventor of a new fastener determined the physical characteristics of the new fasteners and then consulted Southco's numbering system to mechanically assign a product number that described those physical characteristics. To the contrary, the Bisbing declaration states that Bisbing exercised creativity and choice in determining the values to be reflected in the numbers. Therefore, this case will be remanded to the District Court for consideration of the Bisbing declaration.

In conclusion, we note that the *Southco I* panel considered the ruling by the Seventh Circuit Court of Appeals in *American Dental Association v. Delta Dental Plans Association*, 126 F.3d 977 (7th Cir. 1997), to be distinguishable from the present case. The relevance of the holding in *American Dental* has to be reexamined in light of the factual findings of the District Court on remand. On remand, the District Court is entitled to reconsider that relevance in light of the facts presented to it. For example, the court might determine, in light of the Bisbing declaration, that choosing the values and characteristics to incorporate into a product number involves at least a modicum of creativity. If so, it would then be helpful for the District Court to consider the reasoning in *American Dental.*

### IV. Conclusion

For the reasons stated above, the judgment of the District Court will be reversed, and the case will be remanded to the District Court for further proceedings consistent with this opinion, including consideration of the Bisbing declaration.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*