John McTERNAN, et. al, Plaintiffs,

v.

CITY OF YORK, et. al, Defendants.

No. 4:07–cv–88.

United States District Court,
M.D. Pennsylvania.

May 21, 2007.

Benjamin W. Bull, Alliance Defense Fund, Glen Lavy, Scottsdale, AZ, Dennis E. Boyle, Dennis E. Boyle, Esquire, Camp Hill, PA, Jeffrey A. Shafer, Matthew S. Bowman, Alliance Defense Fund, Washington, DC, Leonard G. Brown, Randall L. Wenger, Clymer & Musser, P.C., Lancaster, PA, Randall Wenger, Harrisburg, PA, for Plaintiffs.

Frank J. Lavery, Jr., James D. Young, Lavery, Faherty, Young & Patterson, P.C., Harrisburg, PA, for Defendants.

## MEMORANDUM AND ORDER

JONES, District Judge.

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion for Preliminary Injunction (doc. 2) filed by

Plaintiffs John McTernan, Edward D. Snell, John Wood and Luanne Ferguson on January 16, 2007. Within the Motion, Plaintiffs move the Court to enter an injunction against the City of York and its officials and police officers, preventing the City of York from interfering with Plaintiffs' First Amendment free exercise rights in front of the Planned Parenthood facility located on Beaver Street in the City of York. Plaintiffs also move the Court to enjoin the City of York from enforcing trespass statutes against the Plaintiffs on the handicap ramp that accesses the Planned Parenthood facility.

For the reasons that follow, we shall deny the Motion.

### PROCEDURAL HISTORY:

Plaintiffs initiated this civil action by filing a complaint on January 16, 2007, naming the City of York, Pennsylvania, York Police Commissioner Mark L. Whitman, in his official capacity, and York Officer Jason Jay, in his official and individual capacity, as Defendants. The complaint contains three counts and purports to assert claims pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiffs' First and Fourteenth Amendment rights to: free exercise of religion (Count I); peaceful assembly/expressive association (Count II); and free speech (Count III). In their prayer for relief, Plaintiffs seek declaratory and injunctive relief; nominal damages; and an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Commensurate with the filing of their complaint, Plaintiffs filed the pending Motion. By Order dated January 23, 2007, we granted Planned Parenthood of Central Pennsylvania's ("Planned Parenthood") Motion to Intervene in these proceedings pursuant to Fed.R.Civ.P. 24.

Evidentiary hearings on the pending Motion were conducted on January 25 and February 22, 2007. Following the hearing, the parties were directed to file proposed findings of fact, conclusions of law and supporting briefs. The parties have filed said submissions and therefore the Motion is ripe for our review.

### FINDINGS OF FACT:

Plaintiffs are Christian pro-life advocates who have participated in numerous acts of preaching within the City of York. (Vol.1, 49–50; Vol.2, 86).[1] Defendant City of York is a municipal organization organized and existing under the laws of the Commonwealth of Pennsylvania. Defendant Patrolman Jason Jay is a police patrolman with the City of York Police Department. (Vol.2, 57–59). Intervener Planned Parenthood is a private, non-profit organization, which owns a facility located on the corner of South Beaver Street and Rose Alley in the City of York. (Vol. 1, 14).

At some time prior to November 2006, Planned Parenthood constructed a handicap access ramp from the street level to its entrance that is compliant with the Americans with Disabilities Act ("ADA"). (Vol.2, 23–24, Ex. D–14). The ramp provides access to the inside of the Planned Parenthood building and is separated from the sidewalk by a guardrail. In addition, the ramp rises from six to ten inches above the public sidewalk. (Vol.2, 25).

Pursuant to the Code of Federal Regulations, the clear width requirement for a handicap ramp is thirty-six inches. The ramp must also have handrails on both sides, edge protection/barrier and a protective canopy overhead. (Vol.2, 21–23; Ex. D–14). Planned Parenthood's ramp complies with all of the federal require-

---

1. Volume 1 refers to the transcript of the hearing held on January 25, 2007. Volume 2 refers to the transcript of the hearing held on February 22, 2007.

ments. Its width is sixty inches, including handrails and guardrails on both sides and an overhead canopy. (Vol.2, 23–24, 32; Ex. D–14).

At the top of the ramp, there is a landing. Pursuant to ADA requirements, the landing of a handicap access ramp must have a maneuvering clearance of at least fifty-four inches. Planned Parenthood's ramp has a clearance of fifty-five and one-half inches. (Vol.2, 34, 46).

The Planned Parenthood ramp encroaches between 2.75 and 2.9 feet into the public right-of-way. (Vol. 1, 17; Vol.2, 16; Ex. P–2). However, eight or more inches of the ramp is inaccessible for in ingress or egress due to the width of the handrail and guardrail. (Vol. 1, 16). Therefore, the area in dispute amounts to twenty-four inches of space on the ramp that could be accessible to stand or walk on.

David Redshaw, who was formerly employed as the Zoning Officer for the City of York from May 2006 through January 2007, testified that it was the policy of the City of York's Zoning Office to allow handicap ramps to encroach onto the public right-of-way so long as the encroachment was *de minimis* (less than three feet) and so long as there was at least five feet of public sidewalk remaining. (Vol.2, 16). In the case of the Planned Parenthood ramp, the encroachment was *de minimis* (2.75 to 2.9 feet) and there was more than eight feet of public sidewalk remaining, so the City authorized construction of the ramp on the public right-of-way. (Vol.2, 16).[2]

By letter dated November 22, 2006, Plaintiff McTernan informed Police Commissioner Mark Whitman that the Planned Parenthood ramp protruded into the public right-of-way. (Vol. 1, 53–54).

On November 29, 2006, Officer Jay was assigned to an overtime detail in the vicinity of the Planned Parenthood facility. Officer Jay's job duties on an overtime detail included enforcing the laws of the Commonwealth of Pennsylvania and the Ordinances of the City of York, as well as maintaining order. (Vol.2, 58).[3] When working an overtime detail at Planned Parenthood, Officer Jay does not take any instructions from nor does he report to anyone at the facility. (Vol.2, 60).

Prior to November 29, 2006, Officer Jay had warned the pro-life protestors at the clinic about blocking the entrance at the bottom of the ramp and about blocking persons from exiting vehicles in the parking lot. (Vol.2, 61–63). Prior to November 29, 2006, the protestors had never entered onto the handicap ramp. In Officer Jay's experience, the ramp had only been used for access to and from the facility, including deliveries. (Vol.2, 65).

On November 29, 2006, Plaintiff McTernan informed Officer Jay that "we," referring to himself and the four other protestors present that day, wanted to enter the ramp. (Vol.2, 69). Officer Jay informed the Plaintiffs that if they entered on the ramp that he would arrest them for defiant trespass. (Vol.1, 56–57; Vol.2, 70–73). Officer Jay testified that as far as he knew the ramp was private property and the only people who were licensed or privi-

---

**2.** The Planned Parenthood facility on South Beaver Street is not the only building in the City of York in which the handicap ramp encroaches onto the public right-of-way. Businesses such as Bell Socialization Services, restaurants, and a number of banks have constructed their handicap ramps on the public right-of-way. (Vol.2, 17).

**3.** Prior to November 29, 2006, Officer Jay had worked the overtime detail at Planned Parenthood one or two times a month for two to two and one-half years. (Vol.2, 59). The facility does not pick which officer is assigned to the overtime detail. (Vol.2, 131).

leged to be there were patients, volunteers or staff members. (Vol.2, 70–73).[4]

Prior to the November 29, 2006 incident, the protestors would generally position themselves on the sidewalk near the bottom of the ramp at the mouth of the alleyway in order to interact with people coming to and leaving from the clinic. The protestors would also walk the length of the ramp, engaging individuals entering the clinic. (Vol.2, 65–66). Officer Jay testified that the protestors would be able to continue to engage individuals as they walked up the ramp, as there is sufficient space on the sidewalk for them to do so. (Vol.2, 66–67). Other than warning Plaintiffs not to congregate on the ramp, Officer Jay never tried to inhibit, stop, or prevent the protestors from delivering their message to people on the sidewalk or to people using the access ramp to the facility. (Vol.2, 67).

## STANDARD OF REVIEW:

■ A preliminary injunction is a form of extraordinary relief and should only be granted if the moving party can demonstrate that: (1) the movant has a "reasonable probability of success on the merits;" (2) the movant will be irreparably injured by denial of the relief; (3) the granting of the preliminary injunction will not result in even greater harm to the non-moving party; and (4) granting the relief will be in the public interest. *United States v. Bell,* 414 F.3d 474, 478 (3d Cir.2005); *see also Southco, Inc. v. Kanebridge Corp.,* 258 F.3d 148 (3d Cir.2001).

## DISCUSSION:

### 1. Probability of Success on the Merits

To evaluate this prong of the applicable standard, the threshold issue to be decided is whether the approximately three feet of the handicap access ramp at the Planned Parenthood facility in the City of York is a public forum for purposes of the First Amendment. We find that it is not.

■ As the parties are well familiar, differing levels of scrutiny apply to governmental action that allegedly impedes protected speech depending on the type of forum where the speech occurs. The First Amendment protects speech and other expressive activity in public places or "government fora" and the degree of protection depends on the type of forum at issue. *See Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 572–73, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995); *see also Kreimer v. Bureau of Police for Town of Morristown,* 958 F.2d 1242, 1255–1256 (3d Cir.1992).

■ The Supreme Court has identified three types of fora. *See Arkansas Educational Television Commission v. Forbes,* 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998). First, there are traditional public fora such as streets, parks and public sidewalks which are all considered as places for public assembly and the communication of ideas. *Kreimer,* 958 F.2d at 1261. Second, there are designated public fora, areas that the government has identified for First Amendment activities. *Id.* Third, there are non-public fora, places "which are not by tradition or designation [fora] for public communication 'and are the government equivalent of private property.' " *Id.* at 1256.

■ In traditional and designated public fora, regulation of First Amendment activ-

---

4. Officer Jay based his presumption that the ramp was private property upon his observations; there was a distinct barrier separating the ramp from the sidewalk, there was a canopy overhead, and the only persons he observed using the ramp were people coming and going to and from the clinic. (Vol.2, 68).

ity is constitutional if three conditions are met. First, the regulation must be content-neutral—meaning that it is justified without reference to the content of the regulated speech. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Second, it must be "narrowly tailored to serve a significant government interest." *Id.* Third, it must "leave open ample alternative channels for communication of information." *Id., see also Eichenlaub v. Township of Indiana*, 385 F.3d 274 (3d Cir. 2004). In contrast, the standard under which regulation of non-public fora is whether the regulation is reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view." *United States v. Kokinda*, 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990).

Plaintiffs argue that the three feet of the Planned Parenthood ramp encroaching onto a public sidewalk, owned by the City of York, remains a traditional public forum, and therefore any restriction on the exercise of their First Amendment rights in that area must satisfy strict scrutiny. Defendants and Planned Parenthood argue that the Planned Parenthood ramp is not a public forum, but should rather be treated as private property for First Amendment purposes.

■ "The First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 803, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)(citing *United States Postal Service v. Council of Greenburgh Civic Assns.*, 453 U.S. 114, 130 n. 6, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981)). The Supreme Court has expressly stated that "[w]e will not find that a public forum has been created in the face of clear evidence of a

contrary intent . . ., nor will we infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity." *Id.* (citing *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)).

■ Traditionally, sidewalks are considered public fora. However, as the Supreme Court explained and held in *Kokinda*, "the mere physical characteristics of the property cannot dictate forum analysis." 497 U.S. at 727, 110 S.Ct. 3115. In *Kokinda*, the defendants were convicted of soliciting contributions while situated on a sidewalk which was entirely on Postal Service property. The defendants contended that the sidewalk was a public forum for First Amendment purposes, and therefore subject to strict scrutiny. A plurality of the Supreme Court held that the postal sidewalk was not a public forum, reasoning that:

[t]he postal sidewalk at issue does not have the characteristics of public sidewalks traditionally open to expressive activity. The municipal sidewalk that runs parallel to the road in this case is a public passageway. The postal service's sidewalk is not such a thoroughfare. Rather, it leads only from the parking area to the front door of the post office. Unlike the public street described in *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), which was "continually open, often uncongested, and constituted not only a necessary conduit in the daily affairs of a locality's citizens but also a place people [could] enjoy the open air or the company of friends and neighbors in a relaxed environment." *Id.* at 651, 101 S.Ct. 2559. The postal sidewalk was constructed solely to provide for the passage of individuals engaged in postal

business. The sidewalk leading to the entry of the post office is not the traditional public forum sidewalk referred to in *Perry*.[5]

Nor it is the right of access under consideration in this case the quintessential public sidewalk which we addressed in *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)(residential sidewalk). The postal sidewalk was constructed solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city.

*Kokinda*, 497 U.S. at 728, 110 S.Ct. 3115.

■ The Planned Parenthood ramp bears a striking resemblance to the sidewalk in *Kokinda*. Like the *Kokinda* sidewalk, the Planned Parenthood ramp runs parallel to the street-level sidewalk, which is a public passageway. They both lead from the parking area to the front door of the facility and were constructed solely for the passage of individuals engaged in business at the facility. Additionally, the Planned Parenthood ramp was constructed for the *specific* purpose of complying with the ADA, thereby ensuring that disabled patrons of the facility were able to negotiate the space between the parking area and the entrance of the facility. There is nothing in the record establishing that the ramp was constructed to facilitate expressive activity, daily commerce, or the life of the neighborhood. To the contrary, the ramp's purpose was singular, to effectuate access of patrons, both able and disabled,

to the Planned Parenthood facility. To find otherwise would be absurd.

Having thus ruled that the Planned Parenthood ramp at issue is a non-public forum, a lesser level of scrutiny must be applied to any regulation of it, including Officer Jay's instruction to the Plaintiffs not to enter upon the ramp. As was explained in detail at the hearings, the clear width of the ramp, minus the space occupied by the handrails and guardrails, is 47.25 inches. (Vol.2, 46–47). As previously noted, the minimum clear width required by the ADA is 36 inches. Therefore, the Planned Parenthood ramp has an excess of 11.25 inches of clear width beyond the ADA minimum. It is plain common sense that if an individual other than the fictional Ichabod Crane stood in the area of the ramp that encroaches onto the public right-of-way, there would necessarily be less than the required minimum clear width of 36 inches between the handrails as required by the ADA. Therefore, we find that it is entirely reasonable for Officer Jay to instruct individuals not to stand or congregate on the ramp, because their static presence on the ramp necessarily conflicts with the ramp's accessibility requirements. There is flatly no constitutional violation that arises from such an admonition by Officer Jay.

Based upon the above analysis and conclusions, the Plaintiffs have not met their burden of showing a likelihood of success on the merits. Moreover, our conclusion that the Planned Parenthood ramp is *not* a public forum essentially defeats the Plaintiffs' claims in this regard.[6]

---

**5.** In *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Supreme Court referred to the sidewalk outside of a public school as a traditional public forum.

**6.** Also pending before the Court is Defendants' Motion to Dismiss the Plaintiffs' Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (doc. 29) filed on March 23, 2007. Our decision on that Motion shall be rendered promptly.

### 2. Potential Irreparable Injury to Plaintiffs

█ Plaintiffs argue that the danger of irreparable harm to them is "very real" if the Court does not grant the relief they seek because "[t]hey have been denied access to a public forum by the York City Police, and they have been threatened with arrest if they attempt to enter those portions of the ramp within the public right-of-way in the future." (Rec. Doc. 35 at 21)

It is well established that "[t]he loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). While this premise is axiomatic, Plaintiffs have not been denied First Amendment freedoms. Contrary to their argument, we have held that the Planned Parenthood ramp is *not* a public forum, and it therefore follows that the denial of access to it is *not* unconstitutional, as that denial is reasonable. Moreover, Plaintiffs are not hindered in delivering their message in the vicinity of Planned Parenthood. They may engage individuals ascending the ramp by walking the length of the ramp on the street-level sidewalk, as well as generally speak to people located on the public sidewalk outside the Planned Parenthood facility. Indeed, the record demonstrates that they have vigorously done so in the past. Plaintiffs simply have not shown that they will be irreparably harmed if they are not permitted to enter the Planned Parenthood ramp.

### 3. Likelihood of Harm to the Defendants

█ In stark contrast to our conclusions with respect to the Plaintiffs, the likelihood of potential harm to the Defendants in the event of an injunction is very real. As the Defendants submit, the Plaintiffs seek to prohibit the City from arresting individuals for violating the defiant trespass statute when they enter upon the Planned Parenthood ramp for the purpose of protesting. As aforementioned, allowing individuals to gather and remain static upon the Planned Parenthood ramp necessarily eviscerates the handicap accessibility of the ramp, which is an interest soundly within the City of York's purview. Allowing Plaintiffs to congregate on the ramp is surely the top of a slippery slope, which may lead not only to rendering the ramp inaccessible to the handicapped but also to violence between protestors and patrons. We find that the Defendants will likely suffer harm if the Plaintiffs were granted the requested relief.

### 4. Public Interest

█ While it is well true that the public interest favors the sanctity of the fundamental freedoms guaranteed by the First Amendment, we have already concluded that the Planned Parenthood ramp is not a public forum for First Amendment purposes, and is therefore subject to reasonable regulation. It is apparent that allowing individuals to gather, remain or congregate on the ramp defeats the mandate of the ADA. Under this framework, the public interest clearly favors the ramp's compliance with the ADA over the rights of the protestors.

### CONCLUSION:

In concluding this Memorandum, it is well to note what this case is not about. Despite Plaintiffs' somewhat subtle attempts to implicate the polarizing abortion debate, our determination has nothing to do with the subject of Plaintiffs' protests. Rather, it appears entirely logical to us that the City of York would as a matter of good public policy allow a small portion of its public way to be extinguished in aid of fostering compliance by a business with

the ADA's dictates. Our determination then is based purely upon the nature of the forum.

Plaintiffs' main assertion is at bottom premised on a theory that once an area is designated as a public way, so it is forever. This defies reason and credulity, in particular as applied to the facts of the case at bar. The area in question has ceased to be a public sidewalk and thus it is not a public forum. It is an entrance to a business, and will remain as such until jack-hammered away. At the moment of its construction for use by the Planned Parenthood facility alone, the area of the ramp that encroaches onto the City of York's property lost all the indicia of a public passageway, and was converted to private use. The Defendants' conduct in aid of regulating and policing that use was not unreasonable.

Accordingly, we will not elevate form over substance in aid of making an illogical ruling. The Plaintiff's Motion for a Preliminary Injunction shall be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion for a Preliminary Injunction (doc. 2) is DENIED.