SOUTHCO, INC., Appellant

v.

KANEBRIDGE CORPORATION.

No. 02–1243.

United States Court of Appeals, Third Circuit.

Argued: Dec. 3, 2002.

Reargued En Banc: Oct. 8, 2003.

Filed: Dec. 3, 2004.

James C. McConnon (Argued), Alex R. Sluzas, Paul & Paul, Philadelphia, PA, for Appellant.

Stanley H. Cohen, Caesar, Rivise, Bernstein, Cohen & Pokotilow, Philadelphia, PA, Steven B. Pokotilow (Argued), Stroock, Stroock, and Lavan, New York, NY, for Appellee.

Mark S. Davies (Argued), United States Department of Justice, Civil Division, Appellate Staff, Washington, DC, for Amicus Curiae The United States of America.

Before SCIRICA, Chief Judge, SLOVITER, NYGAARD, ALITO, ROTH, MCKEE, RENDELL, BARRY, AMBRO, FUENTES, SMITH, CHERTOFF, and BECKER, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:*

This is an appeal in a copyright case. Southco, Inc. alleges that Kanebridge Corp. violated its copyright by referring to the serial numbers that Southco assigned to certain parts that it manufactures. The District Court issued a preliminary injunc-

* Chief Judge SCIRICA and Judges SLOVITER, NYGAARD, RENDELL, BARRY, AMBRO, FUENTES join this opinion. Judges McKEE, SMITH, and BECKER Join Parts I and II.

tion forbidding Kanebridge from making such references, but a panel of this Court reversed, holding that Southco was unlikely to succeed on the merits because the serial numbers lacked sufficient originality to be copyrighted. On remand, the District Court granted Kanebridge's motion for summary judgment on the copyright claim, but a different panel of our Court reversed, holding that an affidavit submitted by Southco in opposition to Kanebridge's summary judgment motion was sufficient to demonstrate that the numbers reflected considerable creativity. We now hold that the numbers are not protected by copyright, and we therefore affirm the order granting summary judgment in favor of Kanebridge.

## I.

Southco manufactures a variety of products, including rivets, latches, handles, and "captive fasteners" that are used to fasten two panels together. A "captive" fastener is one whose components are retained in the outer panel when the two panels are detached. "Captive screws" are a type of captive fastener. Each captive screw consists of a "knob" (the component that surrounds the screw head), the screw itself, and a "ferrule" (a component that houses the screw). The captive screw is mounted in the outer panel by means of the ferrule. The other panel contains an internally threaded insert that receives the screw. Captive screws differ among themselves with respect to a few characteristics, such as composition, screw length, screw diameter, thread size, and finish.

To assist its employees and customers in identifying and distinguishing among its products, Southco developed a numbering system under which each particular digit or group of digits signifies a relevant characteristic of the product. Southco has referred to one of the numbers at issue in

this case, part number 47–10–202–10, to show how the system works. The first two digits ("47") show that the part falls within a class of captive screws. Other digits indicate characteristics such as thread size ("632"), composition of the screw (aluminum), and finish of the knob ("knurled"). *See Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148, 149 n. 2 (3d Cir.2001) (*"Southco I"*) (quoting Southco's brief).

A person who understands the Southco system can use it in two ways. First, the person can readily determine from a product number the characteristics of the product designated—for example, the type of product (say, a screw), the type of screw, and all of the characteristics that a user might need to know. Second, working in reverse, a person who knows the characteristics of the product needed for a particular job can determine the number of the product with the desired characteristics. Southco includes its product numbers in handbooks that it publishes each year, and Southco has secured copyright registrations for several of its handbooks.

According to Southco, its part numbers play a significant role in the subcontracting of work on computers and telecommunications equipment. Computer and telecommunications equipment manufacturers often use "subassemblies" supplied by subcontractors, and manufacturers often use Southco part numbers to specify the captive fasteners to be used in these subassemblies. However, manufacturers sometimes permit subcontractors to substitute equivalent fasteners manufactured by companies other than Southco, and this gives the subcontractors an incentive to substitute cheaper fasteners made by Southco's competitors. *See* Joint Appendix ("A") 18–19.

Matdan America ("Matdan") is a Southco competitor that manufactures panel fas-

teners. Kanebridge, known as Matdan's "master distributor," sells Matdan fasteners to other distributors, often at prices lower than Southco's. In order to demonstrate that its fasteners have the same characteristics as Southco's but are sold at lower prices, Kanebridge began to use Southco's part numbers in comparison charts that were included in advertisements and other literature provided to customers. These charts display Kanebridge's and Southco's numbers for equivalent fasteners in adjacent columns, making it clear that the two companies' parts are interchangeable. According to Kanebridge, the "ability to cross-reference Southco panel fasteners in an honest, accurate and comparative manner" is necessary to make competition viable. Kanebridge's *Southco I* Brief at 7. Without this ability, Kanebridge insists, customers would lose the opportunity to obtain lower-cost alternative fasteners. *Id.*

Southco commenced this action against Kanebridge, asserting a claim for copyright infringement under 17 U.S.C. §§ 501–05, 509, as well as Lanham Act claims for false advertising (15 U.S.C. § 1125(a)), trademark infringement (15 U.S.C. § 1114(1)), and unfair competition (15 U.S.C. § 1125(a)), and claims for common law trademark infringement and trademark dilution. In support of its copyright infringement claim, Southco alleged that Kanebridge had copied 51 part numbers for Southco's "Class 47 captive screw fasteners." A23. Examples of the numbers that Southco claimed are protected by copyright are the following:

47–10–202–10

47–11–502–10

47–10–502–50

47–12–502–50

47–62–501–20

A24. Southco alleged that Kanebridge had used these copyrighted numbers in "adver-tising, product brochures, catalogs, reference guides, packaging and/or price lists." *Id.*

The parties agreed to a temporary restraining order containing various restrictions on Kanebridge's use of Southco's part numbers, but when the parties failed to agree on the scope of a preliminary injunction, Southco moved for a preliminary injunction preventing Kanebridge from making any reference to Southco's numbers. The District Court granted the motion, concluding, among other things, that Southco's "numbering *system* is copyrighted." *Southco, Inc. v. Kanebridge Corp.,* No. 99–4337, 2000 WL 21257, at *1 (E.D.Pa.2000) (emphasis added). The Court wrote:

> The Numbering System, with its unique, non-intuitive and highly complex attributes, easily satisfies the standard for originality. It was created out of nothing, and has developed to some use as an industry standard.... It is expandable as new products are developed, and is of use to Southco employees and customers.

*Id.* at *3 (emphasis added).

On appeal, a panel of this Court reversed. *Southco I,* 258 F.3d at 148. The *Southco I* panel began by noting that, "[f]or purposes of copyright law, ... Southco's numbering system and the actual numbers produced by the system are two very different works" and that Southco's claim was based exclusively on the actual numbers and not on the system. *Id.* at 151–52 (footnote omitted). The panel wrote that Southco had "unquestionably devoted time, effort, and thought to the creation of the numbering system" but that Southco's system made it "impossible for the numbers themselves to be original." *Id.* at 153 (emphasis omitted). Focusing on the use of the Southco system to

assign a number to a product in an existing product line,[1] the *Southco I* panel wrote:

> The part has certain relevant characteristics, and the numbering system specifies certain numbers for each of those characteristics. As a result, there is only one possible part number for any new panel fastener that Southco creates. This number results from the mechanical application of the system, not creative thought. If Southco were to develop a new fastener and for some reason decide to exercise creativity when assigning it a number, the resulting part number would fail to accomplish its purpose. Regardless of how small the change is, customers could not effectively identify the relevant characteristics of the panel fastener by simply looking at its part number.

*Id.* at 153. The *Southco I* panel thus concluded that "the creative spark is utterly lacking in Southco's part numbers and that these numbers are examples of works that fall short of the minimal level of creativity required for copyright protection." *Id.* at 152.

On remand, Kanebridge moved for summary judgment. In response, Southco submitted the affidavit of Robert H. Bisbing, a retired Southco engineer who had designed numerous fasteners for Southco and had assigned them product numbers. A262–63. Bisbing explained how he had assigned product numbers to a new class of enclosed retractable captive screws that included 405 variations. A264–71. Bisbing recounted that "it had long been Southco's practice to create a system of numbers for each class of its products," including classes of drive rivets, latches, pulls, and handles, as well as fasteners. A264. He stated that the relevant characteristics of this new class differed from those of previous classes and that he therefore adapted the system to apply to the new line. A267. Bisbing elaborated:

> Although there were a variety of Southco numbering systems in existence in 1971 when I created the enclosed retractable captive screw, including for several classes of captive screws, none of them could be used for the new product. Each of the systems of part numbers that had been created for existing products identified particular values pertinent to those products which would not be useful in the new fasteners.

*Id.* Bisbing therefore identified the characteristics to be designated in the product numbers for the new class and assigned numbers to represent variations within each characteristic. A267–71. For example, he decided to use the fifth digit in each number to show thread size. A269.

The District Court expressed continuing disagreement with the decision in *Southco I* but nevertheless granted Kanebridge's motion for summary judgment on the copyright infringement claim, finding that Bisbing's affidavit provided no new material evidence. A305–06. The District Court further noted that Bisbing's affidavit concerned the creation of the system, not the numbers, and that, under *Southco I*, the creativity of the numbers was the only relevant issue. A314. The parties settled the remaining claims, and Southco appealed the order granting summary judgment on the copyright infringement claim.

On appeal, a panel of our Court reversed. *Southco, Inc. v. Kanebridge Corp.*, 324 F.3d 190, 193 (3d Cir.2003)

---

**1.** We use the term "product line" to mean a category of products that have the same relevant "characteristics" but that differ with respect to the "values" of some or all of those characteristics. Thus, in this usage, screw length is a characteristic, and a screw length of 1/4 inch is a value.

("*Southco II*"). The *Southco II* panel stated that "the *Southco I* panel's conclusion regarding originality involved, at least in part, factual determinations regarding the process by which Southco develops numbers" and that the Bisbing declaration suggested that the prior panel's "conclusions regarding the relationship between the numbering system and the product numbers ha[d] no basis in fact." *Id.* at 196. According to the *Southco II* panel, the earlier panel had labored under the false impression that "the product numbers are mechanically dictated by a preexisting numbering system." *Id.* at 196. The *Southco II* panel concluded that Bisbing's declaration "call[ed] into doubt the *Southco I* panel's factual conclusions about the process by which Southco assigns numbers to new fasteners." *Id.* at 197. The *Southco II* panel continued:

> Bisbing's declaration does not indicate that the inventor of a new fastener determined the physical characteristics of the new fasteners and then consulted Southco's numbering system to mechanically assign a product number that described those physical characteristics. To the contrary, the Bisbing declaration states that Bisbing exercised creativity and choice in determining the values to be reflected in the numbers.

*Id.* at 197. The *Southco II* panel therefore reversed the decision of the District Court and remanded "for consideration of the Bisbing declaration." *Id.* We subsequently voted to rehear this case en banc and vacated the panel opinion.

## II.

We hold that the Southco part numbers are not copyrightable. Two different lines of reasoning lead us to this conclusion.

### A.

First, as we held in *Southco I,* the Southco numbers are not "original."

Under Article I, section 8 of the Constitution, Congress has the power "to secur[e] for limited Times to Authors ... the exclusive Right to their respective Writings." As used in this provision, the terms "Authors" and "Writings" "presuppose a degree of originality," and therefore "[o]riginality is a constitutional requirement." *Feist Publications. Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 346, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Accordingly, Congress has provided copyright protection for "*original* works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a) (emphasis added). In order to satisfy the "original works" requirement, a work must be original in the sense that it was not copied from another's work and in the sense that it shows creativity ("the creativity requirement"). *Feist,* 499 U.S. at 361–363, 111 S.Ct. 1282. Although the creativity requirement is not "stringent," there is "a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 358–59, 111 S.Ct. 1282.

*Feist* illustrates the meaning of the creativity requirement. There, the Rural Telephone Service Company, a provider of local telephone service, published a typical phone book that contained "white pages" listing in alphabetical order the names, towns, and telephone numbers of its subscribers. *Feist,* 499 U.S. at 342, 111 S.Ct. 1282. Rural held a valid copyright in its book as a whole because it contained some original material in the forward and in the yellow pages, and Rural claimed that Feist, which published its own phone book, had infringed Rural's copyright by copying the names, numbers, and towns of the subscribers listed in Rural's white pages. *Id.* at 344, 361, 111 S.Ct. 1282. Rural "essentially concede[d]" that the names,

addresses, and numbers were uncopyrightable facts, but Rural argued that its selection, coordination, and arrangement of these facts reflected sufficient originality to merit copyright protection. *Id.* at 361–62, 111 S.Ct. 1282.

The Supreme Court rejected this argument because Rural published "a garden-variety white pages directory, devoid of even the slightest trace of creativity." *Feist,* 499 U.S. at 362, 111 S.Ct. 1282. The Court observed that "Rural's selection of listings could not be more obvious: It publishes the most basic information—name, town, and telephone number—about each person who applies to it for telephone service." *Id.* "This is 'selection' of a sort," the Court stated, "but it lacks the modicum of creativity necessary to transform mere selection into copyrightable expression." *Id.* The Court also saw little creativity in Rural's "coordination and arrangement of facts," noting that Rural had simply listed its subscribers in alphabetical order, "an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course." *Id.* at 363, 111 S.Ct. 1282.

### B.

In this case, the Southco product numbers are not "original" because each number is rigidly dictated by the rules of the Southco system. Because ideas may not be copyrighted, Southco does not assert any claim of copyright in its numbering *system,* but instead focuses on *the part numbers themselves.* The numbers, however, do not reflect any creativity.

To be sure, before any Southco product could be numbered, Southco had to create the numbering system applicable to products in that line. It had to identify the

relevant characteristics [2] of the products in the class (that is, the characteristics that would interest prospective purchasers); it had to assign one or more digits to express each characteristic; and it had to assign a number or other symbol to represent each of the relevant values [3] of each characteristic. For example, Southco might decide that, for a class of screws, composition was a relevant characteristic; it might assign the eighth digit to indicate composition; and it might use the number 1 to indicate aluminum, 2 to indicate steel, and so on.

Once these decisions were made, the system was in place, and all of the products in the class could be numbered without the slightest element of creativity. Indeed, if any creativity were allowed to creep into the numbering process, the system would be defeated. Suppose, for example, that the person given the task of actually numbering the products in the class in accordance with the applicable rules of the system decided that it would be more fitting to indicate aluminum composition with the number 13 (its number in the periodic chart) rather than the number 1. Customers who wished to purchase aluminum screws but were unaware of this variation would be befuddled. In short, an essential attribute of the numbering process and the resulting numbers is an utter absence of creativity. We thus reaffirm what we said in *Southco I:* the number assigned to each Southco product "results from the mechanical application of the system, not creative thought." 258 F.3d at 153. As a leading treatise states, "basic copyright principles" lead to the conclusion that copyright protection should not be extended to part numbers that represent "an inevitable sequence dictated by the logic of the parts system." 1 WILLIAM F.

---

**2.** We define our use of the term "characteristic" in footnote one, *supra.*

**3.** We define our use of the term "value" in footnote one, *supra.*

PATRY, COPYRIGHT LAW AND PRACTICE 46 (2d ed.2004) (forthcoming). *See also* 1 JOHN W. HAZARD, JR., COPYRIGHT LAW IN BUSINESS AND PRACTICE § 2.58 at 2–79 to 2–80 (2002) (*Southco I* "persuasive" in distinguishing between numbers assigned pursuant to process that requires creativity and numbers assigned under system that leaves no room for creativity).

Nothing in the Bisbing declaration undermines this analysis. The Bisbing declaration points out that before the parts in a particular product class (i.e., a group of products having the same relevant characteristics) can be numbered, a person must identify the product characteristics to be reflected in the numbers and must devise the code to be used to express those characteristics. Southco had to undertake this process when it first devised its system, and it must engage in a similar process whenever it undertakes to number a new product class with relevant characteristics that are different from the products in the existing classes.

A few examples illustrate the point. Suppose that Southco, after originally devising its system for the purpose of numbering fasteners, decided to market and number a very different product, say, handles. In assigning numbers to its handles, Southco obviously could not simply use the system devised for its fasteners because door handles and fasteners have very different characteristics. For instance, an important characteristic of screws is the type of recess on the head, e.g., regular or Phillips. This is obviously not a relevant characteristic of handles.

To take another example, suppose that Southco, after previously numbering captive screws, decided to number a related but nevertheless different product, say, captive fasteners that can be tightened by hand. Again, because such fasteners do not have the same characteristics as captive screws (for instance, like handles, they also lack recesses for a regular or Phillips screwdriver), the system would have to be modified. All of this shows that a certain degree of thought goes into the development of the system for numbering each product line. But once the rules of the system applicable to the particular product class are set, the numbers themselves are generated by a mechanical application of the rules and do not reflect even a spark of creativity.

In arguing that its product numbers satisfy the creativity requirement, Southco relies heavily on *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884), which concerned the copyrightability of a photograph of Oscar Wilde. A statute in force at the time provided expressly that a photograph could be copyrighted, and therefore the Court turned to the question whether the statute was authorized by the Constitution. *Id.* at 55–56, 4 S.Ct. 279. Based on early statutes and long settled practice, the Court concluded that maps, engravings, and etchings could be copyrighted, and the Court added that "[t]he only reason why photographs were not included" in one of the early statutes was "probably" because "photography, as an art, was then unknown." *Id.* at 58, 4 S.Ct. 279.

The Court then addressed the defendant's argument that no photograph could be copyrighted because a photograph does not "embody the intellectual conception of its author" but is instead "the mere mechanical reproduction of the physical features or outlines of some object animate or inanimate, and involves no originality of thought or any novelty in the intellectual operation connected with its visible reproduction in shape of a picture." *Burrow–Giles,* 111 U.S. at 58–59, 4 S.Ct. 279. The Court stated that "[t]his may be true in regard to the ordinary production of a

photograph, and, further, that in such case a copyright is no protection." *Id.* But the Court found it unnecessary to consider that question because it held that the particular photograph at issue was "an original work of art, the product of plaintiff's intellectual invention." *Id.* at 60, 4 S.Ct. 279. In reaching this conclusion, the Court noted a set of findings to the effect that the photograph reflected the plaintiff's "own original mental conception, to which he gave visible form" by posing Oscar Wilde, "suggesting and evoking the desired expression," selecting and arranging "the costume, draperies, and other various accessories," and "arranging and disposing the light and shade." *Id.* (internal quotations omitted).

Southco argues that "the present case is similar to *Burrow–Giles.*" Southco Br. at 33. Southco likens the creation of its numbering system to creative work done by the photographer prior to snapping the photograph of Oscar Wilde, and Southco suggests that the next step in its case (i.e., the numbering of the Southco parts) was no less mechanical than the chemical processes that produced the photograph. *Id.* We see no merit in this analogy.

Southco's flawed analogy requires acceptance of the *Burrow–Giles* defendant's simplistic description of photography. The *Burrow–Giles* defendant basically contended that a photographer does not create a picture (as a painter or engraver does) but simply uses a machine to capture a bit of reality that existed at a particular place and time. In other words, while a painting or engraving is an expression of ideas in the artist's mind, a photograph is a bit of objective reality. Where, as in the case of the Oscar Wilde portrait, the photographer poses the subject, the photographer may exercise creativity in arranging the bit of reality to be captured by the photo, but the photograph itself is not expression.

If this view of photography were correct, photography could be analogized to the operation of the Southco numbering system, which objectively captures a few functional characteristics of products like screws. But the *Burrow–Giles* defendant's description of photography is plainly inaccurate—as the *Burrow–Giles* decision recognized, at least with respect to the not "ordinary" photo that was before the Court.

The Southco numbers are purely functional; the portrait of Oscar Wilde, whatever its artistic merit, was indisputably a work of art. The Southco numbers convey information about a few objective characteristics of mundane products—for example, that a particular screw is one-eighth of an inch in length. A photographic portrait, by contrast, does not simply convey information about a few objective characteristics of the subject but may also convey more complex and indeterminate ideas. The Southco numbers are produced mechanically using a system with fixed rules. No photographic portrait is produced in a comparable way. While a portrait photographer may use conventional principles of photographic composition, those principles are not at all like the fixed rules of the Southco system. Accordingly, there is no real analogy between Southco's numbers and the Oscar Wilde photograph in *Burrow–Giles.*

There is also no merit to the analogy suggested at oral argument between the Southco numbers and a painting that an artist creates by causing paint to drop onto a canvass. An aleatoric painting (or other work of aleatoric art) does not result from the rigid application of a system of pre-set rules. On the contrary, the randomness that is employed expresses the artist's "mental conception." *Burrow–Giles,* 111 U.S. at 60, 4 S.Ct. 279. *See* 1 WILLIAM F. PATRY, *supra,* at 44.

In sum, we hold that the Southco part numbers are not protected by copyright because they are mechanically produced by the inflexible rules of the Southco system.[4]

### III.

■ The Southco part numbers are also excluded from copyright protection because they are analogous to short phrases or the titles of works. Since at least 1899, it has been the practice of the Copyright Office to deny registration to "words and phrases." 1 W. Patry, Copyright Law and Practice 333 n. 89 (1994). In a 1958 circular, the Copyright Office stated:

> To be entitled to copyright protection, a work must contain something capable of being copyrighted—that is, an appreciable amount of original text or pictorial material.... Brand names, trade names, slogans, and *other short phrases or expressions cannot be copyrighted,* even if they are distinctively arranged or printed.

Circular No. 46, Copyright In Commercial Prints and Labels (1958) (emphasis added). This circular went on to suggest that protection for short phrases used in connection with commercial products is more appropriately addressed under federal trademark law and laws relating to unfair competition. *Id.*

Shortly after publishing this circular, the Copyright Office issued a regulation providing that words and short phrases such as names and titles may not be copyrighted. See 24 Fed.Reg. 4956 (June 18, 1959). The current version of this regulation now provides in relevant part:

> The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained:
>
> (a) *Words and short phrases such as names, titles,* and slogans; familiar symbols or designs; mere variations of typo-

---

4. Contrary to any suggestion to the contrary in the dissent, our decision is consistent with *American Dental Association v. Delta Dental Plans Association,* 126 F.3d 977 (7th Cir. 1997), *Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366 (10th Cir.1997), and *Toro Co. v. R & R Products Co.,* 787 F.2d 1208 (8th Cir.1986). *See Southco I,* 258 F.3d at 153–56.

There is also no tension between our decision in this case and *Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222, 1236 (3d Cir.1986). In *Whelan Assocs.,* we held that the non-literal structure of a computer program represented expression, rather than an idea, and was entitled to copyright protection. The dissent argues that the test that we used in *Whelan Assocs.* to distinguish between idea and expression "strongly supports the position that Southco's numbering of products should fall on the 'expression' side of the line," Dissent at 10–11, but this argument is beside the point. No one has ever suggested that the Southco part numbers fall on the "idea" side of the line. The relevant question is not whether the numbers represent an idea, as opposed to the expres-

sion of the idea, but whether the numbers possess the requisite spark of creativity needed for copyright protection.

The dissent advances an argument that is very different from the position that Southco has taken throughout this litigation. The dissent contends that the expression at issue here consists of both "the particular numbers" at issue *and* "the numbering rules" that produced those numbers. Dissent at 3. But Southco has never claimed that its numbering "rules" or "system" is copyrightable. In its brief in *Southco I,* counsel for Southco wrote: "There is no monopoly on the system; anyone is free to use it ... with impunity. It is only the particular expression that Southco seeks to protect—the precise nine digits which express the idea in each part number." Appellee's Br. at 14, *Southco, Inc. v. Kanebridge Corp.,* No. 00–1102. Counsel reiterated this point at oral argument, stating: "The system is not copyrightable. And, indeed, it's perfectly open to the defendants to use the system. They're free to use it. The only thing that we're protecting here are the expressions."

graphic ornamentation, lettering or coloring; mere listing of ingredients or contents . . . .

37 C.F.R. § 202.1 (2004) (emphasis added).

In *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544 (2d Cir. 1959), the Second Circuit endorsed this principle and termed the above regulation a "fair summary of the law." *Accord, e.g., Alberto–Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir.1972); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519–20 (1st Cir.1996); *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 632–33 (6th Cir.2001).

Relying on the short phrases regulation, the government tells us, "the Register of Copyrights routinely determines that a part number does not 'constitute[ ] copyrightable subject matter'" under 17 U.S.C. § 410. U.S. Amicus Br. at 13. The government also calls to our attention letters from the Examining Division of the Copyright Office that illustrate this practice, and the government notes that Congress has not disturbed "the Copyright Office's long-standing practice against registering short phrases, despite repeated and extensive revisions of the copyright code." *Id.* at 17.

The government suggests that this practice serves at least two purposes. First, the government notes that "[a] short phrase such as a part number typically lacks any creativity whatsoever." U.S. Amicus Br. at 11. Second, the government suggests that extending copyright protection to part numbers would unduly interfere with the legitimate use of the numbers in question. *Id.* at 15. Because the owner of a copyright "has the exclusive rights" "to reproduce the copyrighted work," 17 U.S.C. § 106, if a part number (say, 471020210, to take the example discussed above) were copyrighted, *any* use of the number would potentially infringe the copyright. Moreover, if Southco's nine-digit numbers are protected, would there be a principled basis for denying protection to a number with, say, seven or five digits? Could a company or person thereby obtain the exclusive right to use the number 4,710,202 or 47,102? In light of the huge number of part and product numbers (and other analogous numbers) that now exist, this prospect gives reason for concern. Although the fair use defense would presumably protect the use of such numbers in most situations, fair use is an affirmative defense and may impose an undue burden.

■■■ We believe that the Copyright Office's longstanding practice of denying registration to short phrases merits deference.[5] *See DeSylva v. Ballentine*, 351 U.S. 570, 577–78, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); *Morris v. Business Concepts*, 283 F.3d 502, 505–06 (2d Cir.2002) (*Skidmore* deference); *Marascalco v. Fantasy, Inc.*, 953 F.2d 469, 473 (9th Cir.1991); *Cablevision Systems Dev. Co. v. Motion Picture Ass'n of Am., Inc.*, 836 F.2d 599, 608–10 & n. 16 (D.C.Cir.1988) (*Chevron* deference).[6]

---

**5.** We do not decide what degree of deference is warranted under the circumstances. At a minimum, the practice of the Copyright Office "reflects a 'body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Yates v. Hendon*, 541 U.S. 1, 124 S.Ct. 1330, 1342, 158 L.Ed.2d 40 (2004) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). This guidance leads us to

conclude that the Copyright Office's position is correct.

**6.** To the extent that *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 946–47 (2d Cir. 1975), is inconsistent with this proposition, we are persuaded by the criticism of that opinion in *Cablevision Systems*, 836 F.2d at 609–10.

We accept the Copyright Office position and believe that it logically extends to part numbers.

## IV.

For the reasons set out above, we hold that the Southco part numbers are not entitled to copyright protection. We therefore affirm the order of the District Court granting summary judgment in favor of Kanebridge on Southco's copyright infringement claim.[7]

BECKER, Circuit Judge, concurring, with whom Judges McKEE and SMITH join.

I join in Parts I and II of the majority opinion. For the reasons set forth in Part II hereof, I do not join in Part III of the majority opinion, dealing with short phrases. I write separately to set forth additional grounds for affirmance, relying on the doctrine of *scènes à faire*, which I believe undergirds and complements the majority's explanation of why the Southco part numbering system does not meet the originality requirement.

## I.

### A.

*Scènes à faire* has been most commonly employed in the literary or dramatic context to describe those otherwise expressive elements of a work that are "standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.,* 307 F.3d 197, 214 (3d Cir.2002) (quoting *Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 838 (10th Cir.1992)). Industry standards often trigger the doctrine of *scènes à faire*. As the Tenth Circuit has explained, *scènes à faire* has been utilized

> to exclude from protection against infringement those elements of a work that necessarily result from external factors inherent in the subject matter of the work. For computer-related applications, these external factors include hardware standards and mechanical specifications, software standards, and compatibility requirements, computer manufacturer design standards, industry programming practices, and practices and demands of the industry being serviced.

*Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1375 (10th Cir.1997).

To develop its part numbers, Southco first chose certain "characteristics" of the captive screw, such as screw length, thread size, or finish, to incorporate into its system. Next, Southco determined which "values" to assign to each characteristic. For example, the values for the "materials and finishes" characteristic include "natural finish, aluminum" or "black finish, steel." Next, Southco set Arabic numerals to represent each characteristic and its attendant values. Thus, the symbol "10" was chosen to represent the value "natural finish, aluminum" in the material and finish characteristic. Finally, unique part numbers were generated for individual parts using the parameters provided by the first three steps.

The majority focuses its originality analysis on this final stage, when the part numbers are assigned mechanically to identify particular types of captive screws. I agree with the majority that at this stage, once all of the decisions about possible characteristics, values, and numerals

---

7. Our decision is limited to what is before us, i.e., the Southco part numbers. We express no view about any of the different forms of expression (*e.g.,* the Weight Watcher point system or restaurant lists) discussed in the dissent.

have been made, "all of the products in the class could be numbered without the slightest element of creativity." I acknowledge that at least superficially, the earlier stages of Southco's part numbering system are the product of a number of choices about which characteristics to represent, choices about which values to permit, and choices about which symbols to use. I would not ignore this part of the process as the majority does. To draw an analogy to *Burrow–Giles:* Sarony's photograph was protected even though all of his choices evincing originality were made before the copyrightable "work[ ] of authorship [was] fixed in a[ ] tangible medium of expression," 17 U.S.C. § 102; and so too we should not pass by any of Southco's choices evincing originality simply because they were made before any part numbers were actually computed and written down. *See* Majority Op., *supra,* at 285–87.

But even this cannot protect Southco's part numbers: As the description of Southco's part numbering system makes clear, the company selected characteristics for its system based on customer demand (an external constraint), thereby precluding copyright protection by *scènes à faire.* Likewise, once the characteristics were chosen, the values—such as screw thread sizes, screw lengths, or ferrule types—were determined by industry standards rather than through any exercise of originality by Southco. Thus, for the characteristic "finish," the values are limited to the types of finishes for screws manufactured by Southco and therefore are determined solely by the part identity, rather than through some exercise of creative expression. Similarly, for the characteristic "thread size," the values are simply the standard industry sizes.

### B.

As I read Judge Roth's dissent, the linchpin of her position lies in her statement that

Southco uses the first two digits of each nine-digit part number to indicate product line but it could use three digits (perhaps to easily accommodate more than ninety-nine product lines), or letter instead of numbers, or a combination of letters and numbers, or even simple abbreviations in lieu of coded letters or numbers. All these possible variations apply to each set of digits in the part number, to the order of the sets, and to the identification of which product attributes should be grouped together in the same set. Of course, there is nothing pre-determined about the length of a part number. For instance, Southco could choose to use more than nine digits to accommodate products with too many values to be easily expressed in only nine. These seem like relatively mundane choices, but, as the Supreme Court indicated in *Feist,* "the requisite level of creativity is extremely low; even a slight amount will suffice."

While this argument is not without force, there appears to be a continuum involved, and I disagree with the conclusion that Judge Roth draws, for the choices at issue seem to me to fall clearly on the unoriginality spectrum. Arbitrary choices such as these do not satisfy the originality requirement. As far as the purpose of the Copyright Clause is concerned, there is no reason to give an incentive to churning out arbitrary symbols, for purely arbitrary decisions do not advance "science."

Judge Roth cites *American Dental Association v. Delta Dental Plans Ass'n,* 126 F.3d 977 (7th Cir.1997) (*ADA* ) as support for the notion that picking digits can be original. But the subject matter of that case was different; at issue was the coding system used for various dental procedures. The holding of that case is driven by the

originality in the editorial selections that had to be made in putting the code together. The examples from *ADA* quoted in footnote 6 of Judge Roth's dissent refer to editorial choices made in ordering the procedure code taxonomy in a way that was (1) expandable in certain respects, which expresses predictions about how dental science will develop; and (2) categorized in a certain way (i.e., the heading under which a procedure appears) that reflects an original way of expressing the similar relationships among different dental procedures. In *ADA* there was plainly a record that described the editorial choices that were made in developing the taxonomy. All the illustrations in the portion quoted by the dissent are the product of editorial choices. In contrast, the Bisbing declaration here flatly explains how baldly unoriginal was the numbering system's architecture: the screws exist in various sizes, so it needs to use (arbitrary) symbols to represent those sizes; and so on.

I also note that the originality in *ADA* comes from the system's ability to state something original about the relationship of one dental procedure to another. The same is true in Southco's system, but the relationships expressed are totally unoriginal (Screw X is the same material as Screw Y, but a different material from Screw Z; Screw A is the same amount longer than Screw B as Screw C is longer than Screw D). Dental procedures do not come pre-categorized in the way that raw physical characteristics do. The originality in *ADA* stems from the tricky-to-sort-out nature of the myriad medical procedures under consideration.

In sum, not only are there a limited number of relevant characteristics, but the characteristics chosen by Southco were dictated by industry standards, customer preferences, or the objective characteristics of the captive screw itself. The *scènes*

*à faire* doctrine, therefore, dispels the notion that there was the requisite originality in Southco's selection of characteristics and values to merit copyright protection.

## II.

The majority relies upon the Copyright Office's "long-standing practice" of denying copyright protection to words and short phrases because names, titles, and short phrases "typically lack[ ] any creativity whatsoever." The majority fails to demonstrate, however, that the Southco part number system is a "typical" case. In order for any test that purports to distinguish between short phrases and copyrightable compositions to be viable it would have to identify the point at which a title or short phrase becomes a descriptive narrative. Presumably the length of the writing in question informs this determination, but what else? The majority does not specify the test, and this is not a situation, I respectfully submit, where we "know it when [we] see it." The Copyright Office says that short phrases "lack ... *creativity*" (emphasis added), but *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903), suggests that courts generally should refrain from subjective assessments of creative merit, and I agree. Whatever the test, I think the inquiry would inevitably draw us back to the constitutional requirement of originality–the presence of the "creative spark" from *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). But to do that is to render the short phrases notion nothing more than an unhelpful way of restating the problem.

Put differently, the problem in this case is whether the Southco part numbers are words, short phrases, names or titles, or whether they are instead a compilation of data, a system of classification, or some-

thing else. Indeed, the part numbers seem to fall into the gray area between a short phrase and a more extensive work. This ambiguity is highlighted by the fact that the cases cited by the majority as approving of the Copyright Office practice are either distinguishable from the instant case or rest their decision to withhold copyright protection on other grounds. *See, e.g., Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 545 (2d Cir.1959) (approving the Copyright Office practice, but ultimately analyzing the case under theories of originality and merger); *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519–21 (1st Cir.1996) (finding that some aspects of the claim were foreclosed because they were merely slogans or short phrases, but resting primarily on lack of originality grounds); *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 633 (6th Cir.2001) (holding a line from a movie was not copyrightable where it was "nothing more than a short phrase or slogan, dictated to some degree by the functional considerations inherent in conveying the desired information").

There are still greater problems with the majority's approach. It appears to rely entirely on *Skidmore* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). But deference to a practice of the Copyright Office, employed to assist in its humongous administrative task of deciding whether or not to grant a copyright registration, does not seem to me to be sufficient to decide an infringement case in federal court. The Copyright Office may employ rules of thumb; we may not, especially when we are dealing with a constitutional provision, for *Feist* holds that originality is a constitutional requirement, *see* 499 U.S. at 346, 111 S.Ct. 1282.

Moreover, mere homage to deference cannot prevail without at least analyzing the countervailing arguments. Southco argues forcefully that the government-amicus has not justified its argument that part numbers are short phrases. Southco properly points out that the term "phrase" used by the Copyright Office is a grammatical term peculiarly adapted to copyrightable subject matter expressed in words. Concomitantly, it is difficult to see what the basis is for treating numbers or numerical symbols as "short phrases."

Southco also forcefully challenges the position that the Copyright Office in fact considers numbers as short phrases. Its brief persuasively argues, "There is nothing in the record of this case indicating that the Copyright Office ever considered that part numbers were uncopyrightable as 'short phrases.' No regulation of the Copyright Office refers to part numbers or any other numbers. No case is cited in which the Copyright office was a party, holding that part numbers or any other numbers are uncopyrightable." Without a regulation or policy clearly addressing numbers, deference seems inappropriate.

For all these reasons, I would not rest this decision, even in part or in the alternative, on the short phrases argument. I add only that, as the foregoing discussion makes clear, I am in agreement with what Judge Roth has written in Part II of her dissenting opinion on this point.

ROTH, Circuit Judge, dissenting, with whom Judge CHERTOFF joins.

## I.

Ideas cannot be protected by copyright. Section 102(b) of Title 17 of the U.S.Code so provides. The expression of an idea may, however, be protected. This principle that copyright does not protect ideas, but only their expression, is notoriously

difficult to apply.[8] *See Whelan Assoc., Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1234 (3d Cir.1986); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir.1983). As Judge Learned Hand stated in the last of his many influential opinions on copyright law, "[o]bviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be *ad hoc.*" *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960).

In defining an idea, as distinguished from its expression, the distinction is governed—at least in part—by the two contradictory imperatives of copyright: protection and dissemination.

> Precisely because the line between idea and expression is elusive, we must pay particular attention to the pragmatic considerations that underlie the distinction and copyright law generally. In this regard, we must remember that the purpose of the copyright law is to create the most efficient and productive balance between protection (incentive) and dissemination of information.

*Whelan Assocs.*, 797 F.2d at 1235; *see also id.* at 1237 (stating that "the basic purpose underlying the idea/expression distinction [is] the 'preservation of the balance between competition and protection reflected in the patent and copyright laws'") (quoting *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)); *Apple Computer*, 714 F.2d at 1253 (quoting *Kalpakian*).

The definition of the "idea" is often the most difficult aspect of the idea/expression dichotomy. As Judge Hand explained in *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930), the difficulty is that "idea" *vis à vis* "expression" can be manipulated by viewing the interest protected by copyright at differing levels of abstraction. *See Nash v. CBS, Inc.*, 899 F.2d 1537, 1540 (7th Cir.1990) (Easterbrook, J.) (discussing *Nichols*). At the "expression" end of the spectrum, if protection is limited to the words as they appear on the page—a strictly literal application of the term "expression"—the protection for original Writings envisioned by the Constitution would be severely weakened. An author could imitate the plot, exposition, and all other original elements of a novel so long as he changed the wording. *Id.; Nichols*, 45 F.2d at 121. At the "idea" end of the spectrum, an author could claim property rights to an entire genre. If this were possible, Wilkie Collins, by writing *The Moonstone*, would have captured the mystery story; the innovators of television's *Survivor* reality series might have deprived the public of *The Amazing Race, Fear Factor,* or even *Temptation Island. See Nash*, 899 F.2d at 1540.

In the present case, the definition of Southco's "idea" is at the heart of my disagreement with the majority. Is Southco's "idea" the use of a code to describe products or is it the use of predetermined numbers to portray given characteristics of a particular product? The majority has determined that it should be the latter. I believe that it is closer to the former—and that the numbering rules and the particu-

---

**8.** 17 U.S.C. § 102(b) provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained,

illustrated, or embodied in such work." *See Whelan Assocs., Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1234 (3d Cir.1986) (noting that legislative history makes clear this section was intended to codify the idea/expression dichotomy).

lar numbers that Southco chooses to portray what it determines to be the relevant characteristics of a particular product are the expression of its idea. Moreover, it is this choice of different numbers to express selected characteristics in a product description code that creates the originality in Southco's system.

The majority, however, in misapplying the idea/expression dichotomy, has adopted an unduly restrictive understanding of the originality requirement. As in *Southco I*, the majority has adopted an overly broad definition of the "idea." By deciding that the determination of the part number is inherent in the "idea," the majority has pushed all of Southco's creative work onto the unprotected "idea" side of the idea/expression dichotomy. This over broad definition of the "idea" leads inexorably to the majority's conclusion—that Southco's part numbers are undeserving of copyright protection because they lack originality. As stated by the majority, "the Southco product numbers are not 'original' because each number is rigidly dictated by the rules of the Southco system." Majority at 282; *see Southco I*, 258 F.3d at 151–52.[9]

In so stating, the majority has failed to consider the ramifications of its choice, or even to recognize that a choice exists. By extending the "idea" through to point in the creation of the code at which the number is inevitable, the majority has concluded that the rules constitute an unprotectable system or idea. Majority at 282. This "literal" approach is akin to limiting copyright protection in a novel to the words as they appear on the page. *Nash*, 899 F.2d at 1540.

I believe that a more sensible middle ground is available. If one adopts a slightly broader focus, Southco's numbering rules (and the resulting numbers) will be seen as one of many possible expressions of the idea of using a code to convey product specifications.

Southco could, of course, go farther still, to the far end of the spectrum, and claim that the unprotectable idea is that of encoding information about product identity. Then, by virtue of its innovative scheme, Southco could prevent others from expressing *any* part numbers that contain coded product characteristics. This would be going too far—and would analogize to

---

**9.** The Majority also states that Southco "does not assert any claim of copyright in its numbering *system*, but instead focuses on the *part numbers themselves.*" Majority at 282. Section 102(b) of course excludes copyright protection for a "system" as well as for an "idea." That there is such an interchangeability of the concepts of "system" and "idea" may be seen in Southco's *Southco I* Answering Brief at page 24 where Southco states "Southco does not seek to copyright the idea of its parts numbering system but only its expression of it." "System" is also, however, used at times by many of us to indicate not just an idea but the means by which an idea is implemented. Used in this manner, "system" for Southco would be the code which it has created to describe its products—the expression of its idea.

In its *Southco II* Opening Brief at page 34, Southco states that "the prior panel appeared to fully understand that Southco was not claiming infringement by the use of its system for creating part numbers but only in the part numbers themselves...." "System" appears again here to be used in the context of "idea."

This language may, however, be the source of the Majority's statement that Southco does not assert any claim of copyright in its "numbering system." To the extent that the Majority interprets this statement to indicate that Southco does not claim protection of its coding process, as opposed to protection of its idea to develop a coding system, I believe that the Majority's interpretation reflects its mistaken location of the line between "idea" and "expression" and, moreover, that the Majority's interpretation does not reflect the originality and creativity arguments that Southco has been pressing throughout this litigation.

the "genre" claim discussed in *Nash* and *Nichols*. *Id.* Granting Southco the exclusive right to create encoded part numbers would stifle innovation. But is it not equally clear that the majority's approach—which would limit expression to the literal elements of a work and then bar copyrightability for lack of originality—is too narrow?

The majority's too broad definition of the "idea" risks under-rewarding Southco (or any other entity) for the creativity invested in creating coded descriptions of its products. On the other hand, adopting the middle approach would not impair Kanebridge's ability to implement its own part numbering system, choosing which characteristics are to be conveyed for each product line and how to convey them.[10]

If there were only one sensible way to achieve the goal of encoding product specifications for captive fasteners (or any other product line), this case would be a different case—either or both the *scènes à faire* or the merger doctrines would prohibit extending copyright protection to Southco's numbers.[11] However, there are myriad codes to choose and product characteristics to describe. The existence of these possibilities renders the *scènes à faire* and merger doctrines inapplicable.

Justification for my position can be seen in the fact that, while the selection of product specifications to be encoded in a given product line may be dictated largely by industry considerations, there would seem to be no limit to the number of ways those specifications could be encoded. For instance, Southco uses the first two digits of each nine-digit part number to indicate product line, but it could use three digits (perhaps to easily accommodate more than ninety-nine product lines), or letters instead of numbers, or a combination of letters and numbers, or even simple abbreviations in lieu of coded letters or numbers. All these possible variations apply to each set of digits in the part number, to the order of the sets, and to the identification of which product attributes should be grouped together in the same set. Of

---

**10.** Kanebridge might be impaired somewhat in its ability to compete with Southco in the marketplace for captive fasteners and other products, but this is not the type of competition copyright law is concerned with. Copyright law is concerned with Kanebridge's ability to compete with Southco's *part numbers,* not with Southco's *parts. See Apple Computer,* 714 F.2d at 1253 (rejecting Franklin's contention that granting copyright protection to Apple's operating system programs would frustrate Franklin's business goal of achieving total compatibility with application programs written for the Apple II, explaining that "that is a commercial and competitive objective which does not enter into the somewhat metaphysical issue of whether particular ideas and expressions have merged").

**11.** The merger doctrine is a variation or application of the idea/expression dichotomy. "When the idea and the expression of the idea coincide, then the expression will not be protected in order to prevent creation of a monopoly on the underlying 'art.'" *Educational Testing Services v. Katzman,* 793 F.2d 533, 539 (3d Cir.1986). If, on the other hand, " 'the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result.' " *Apple Computer,* 714 F.2d at 1253 (quoting *Dymow v. Bolton,* 11 F.2d 690, 691 (2d Cir.1926)).

"*Scènes à faire* are 'incidents, characters or settings which are as a practical matter indispensable ... in the treatment of a given topic.'" *Whelan Assocs.,* 797 F.2d at 1236 (quoting *Atari, Inc. v. North American Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir.1982)). When applied in the context of utilitarian works, this doctrine means that protection is denied to " 'those elements of a work that necessarily result[ ] from external factors inherent in the subject matter of the work.' " *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 214–15 (3d Cir.2002) (quoting *Mitel,* 124 F.3d at 1375). The rationale for the rule is that elements dictated by external constraints necessarily lack originality. *Id.*

course, there is nothing predetermined about the length of a part number. For instance, Southco could choose to use more than nine digits to accommodate products with too many values to be easily expressed in only nine.[12] These seem like relatively mundane choices, but, as the Supreme Court indicated in *Feist*, "the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble, or obvious' it might be." 499 U.S. at 345, 111 S.Ct. 1282 (quoting 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1.08[C] (1990)). Further, these are precisely the types of prosaic choices deemed sufficiently creative to make numeric dental procedure codes copyrightable in *American Dental Association v. Delta Dental Plans Association*, 126 F.3d 977, 979 (7th Cir.1997).[13]

Moreover, placing Southco's numbering system on the expression side of the idea/expression dichotomy would also be consistent with the reasoning of the Eighth Circuit Court of Appeals in *Toro Co. v. R & R Products Co.*, 787 F.2d 1208 (8th Cir.1986). There, the court rejected the district court's holding that the appellant's numbering system for lawnmower replacement parts was an uncopyrightable "system" per § 102(b):

> [T]he district court's literal application of the section's language—that appellant's parts numbering system is not copyrightable because it is a "system"—cannot stand. All the idea/expression dichotomy embodied in § 102(b) means in the parts numbering system context is that appellant could not copyright the idea of using numbers to designate replacement parts. Section 102(b) does not answer the question of whether appellant's particular expression of that idea is copyrightable.

*Id.* at 1212; *see also Autoskill Inc. v. National Educational Support Systems, Inc.* 994 F.2d 1476, 1493, 1495 n. 23 (10th Cir.1993) (citing *Toro* for the proposition

---

**12.** For example, Robert H. Bisbing explained that while the second two-digit group in each part number normally indicates whether a product is an assembled part or a component part, for at least one product line (an enclosed retractable captive screw), he decided to use only one digit to express this information because he determined he would need the remaining six digits (as opposed to only five) to express the remaining pertinent product values. *Southco II*, 324 F.3d at 193. If Southco used a ten-digit system, Bisbing would not have needed to alter the standard numbering format. This would make number formats more consistent across product lines, and therefore somewhat easier to use. Perhaps Southco did not anticipate ever needing more than nine digits, or perhaps some other technological or operational consideration was at work. The point is that Southco made creative choices regarding the coded expression of product specifications, both when it initially conceived of its system and as it adapted that system to accommodate new product lines over the years.

**13.** The court in *American Dental Association* gave several examples of original choices made in the numbering format used in the *Code on Dental Procedures and Nomenclature:*

> The number assigned to any one of these three descriptions could have had four or six digits rather than five; guided tissue regeneration could have been placed in the 2500 series rather than the 4200 series; again any of these choices is original to the author of a taxonomy, and another author could do things differently. Every number in the ADA's Code begins with zero, assuring a large supply of unused numbers for procedures to be devised or reclassified in the future; an author could have elected instead to leave wide gaps inside the sequence. A catalog that initially assigns 04266, 04267, 04268 to three procedures will over time depart substantively from one that initially assigns 42660, 42670, and 42680 to the same three procedures.

126 F.3d at 979.

that "more than literal application of § 102(b) is required"). The *Toro* court ultimately concluded that the parts numbering system in that case was not copyrightable because the appellant's decision to arbitrarily assign a random part number to each new product "lack[ed] the requisite originality for copyright protection." 787 F.2d at 1213; *see also Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1373 (10th Cir. 1997) (citing *Toro* in support of conclusion that the "arbitrary selection of a combination of three or four numbers" for use as command codes used to instruct a piece of computer hardware "required de minimis creative effort"). However, the *Toro* court stated that "[t]his is not to say that all parts numbering systems are not copyrightable. A system that uses symbols in some sort of meaningful pattern, something by which one could distinguish effort or content, would be an original work." 787 F.2d at 1213.[14] As discussed above and as verified by Robert Bisbing in his affidavit recounting the creation of the descriptive code for the captive screw,[15]

Southco made numerous creative choices in developing its coded product numbering system and later adapting that system to accommodate new product lines. Accordingly, both Southco's numbering schemes and its numbers are entitled to copyright protection.

This result is consistent with our own precedent. In *Whelan Associates*, we were faced with the issue whether copyright law protects the non-literal structure of a computer program as well as its literal elements (its source and object code). 797 F.2d at 1234. Squarely addressing the line-drawing issue, we devised a rule for dividing ideas from expressions in utilitarian works:

> [T]he purpose or function of a utilitarian work would be the work's idea, and everything that is not necessary to that purpose or function would be part of the expression of the idea. . . . Where there are various means of achieving the desired purpose, then the particular means

---

**14.** The *Southco I* panel seized on the word "effort" to distinguish *Toro* on the ground that it relied on the "sweat of the brow" or "industrious collection" doctrine later rejected by the Supreme Court in *Feist*, 499 U.S. at 360, 111 S.Ct. 1282. *See Southco I*, 258 F.3d at 153. Indeed, the *Toro* court seemed to rely in part on this discredited doctrine in concluding that the parts numbering system in that case lacked originality. *Toro*, 787 F.2d at 1213. However, the "sweat of the brow" doctrine has no bearing on *Toro's* discussion of the idea/expression dichotomy, including its observation that the proper dividing line is between the general idea of a parts numbering system and an author's expression of that idea in a particular numbering system. *Id.* at 1212. Once the line has been properly drawn, the issue whether a particular numbering system is sufficiently original turns on whether the system was independently produced and possesses "at least some minimal degree of creativity." *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. As discussed in the text, Southco made numerous creative and inde-

pendent choices in the development and adaptation of its numbering rules.

**15.** *See* footnote 4 *supra*. In explaining how he assigned product numbers to a new class of captive screws that included 405 variations, Bisbing stated that the characteristics of the new class differed from those of previous classes. His task was to determine the characteristics which would be relevant to customers and to Southco employees. He then adapted the numbering system to apply to the new line. He elaborated in his Declaration:

> These numbers were not dictated by any numbering system. Not only each number as a whole, but each group of digit and each digit in each number was created by me based upon the specific products which I had created and my determination of the values of those products to be represented and the digits to be used. The part number for each new part was created on the basis of my decision.

chosen is not necessary to the purpose; hence, there is expression, not idea. *Id.* at 1236. We explained that this rule would further the purpose of balancing the imperatives of access and protection by creating an incentive commensurate with the value and importance of program structure while not giving programmers a "stranglehold" over the means to achieve a particular function. *Id.* at 1237. We held that the program structure in that case was not essential to its purpose—supporting the business operations of a dental laboratory—because other programs with different structures performed the same function.[16] *Id.* at 1238. Thus, the court explicitly recognized that non-literal elements of a utilitarian work could be considered protectable expressions rather than unprotected ideas, *see, e.g., id.* at 1237, 1239, and devised a sensible means for deciding the issue. The *Whelan Associates* test strongly supports the position that Southco's numbering of products should fall on the "expression" side of the line. The purpose of the scheme is to encode relevant product specifications in part numbers, but Southco's particular scheme is not necessary to achieve this end—other schemes could provide the same information.

One difference between Southco's numbers and the computer program in *Whelan Associates* warrants discussion. There is no doubt that the literal elements of the computer program at issue in *Whelan Associates*—the object and source code—were protected by copyright. 797 F.2d at 1233. Source code does not follow automatically from program structure, whereas Southco's part numbers are dictated by the numbering schemes applicable to each

product line. The issue in *Whelan Associates* was whether the original program structure should be protected *in addition to* the original source and object codes, *id.* at 1233–37, whereas in this case the issue is whether Southco's encoded numbers should be protected *because of* the originality of its numbering rules. However, this distinction is immaterial to *Whelan Associates*'s idea/expression test for non-literal elements of utilitarian works. Once Southco's numbering rules are properly placed on the expression side of the line, the distinction between Southco's rules and the resulting numbers is legally insignificant. The numbers are part of Southco's original expression, even if they are dictated by another part of that expression – the numbering rules.

I further note that the majority's decision to divide Southco's numbering rules from the numbers themselves for purposes of evaluating Southco's copyright claim may suggest and certainly creates an unjustified and unexplained bias against copyright protection for all rule-based expression. Systematic or rule-driven thought will usually "precede" expression, as it does here. That is, Southco's original work had to be completed before its numbers were actually expressed, and the rules governing that expression may be readily conceptualized apart from the numbers themselves. In contrast, original artistic or literary thought is usually bound up inextricably in its expression. Southco's numbering scheme is no less creative or original simply because it is governed by rules rather than the more "indeterminate ideas" typically associated with art or literature. *See* Majority at 286. However,

---

**16.** It should be noted that the *Whelan Associates* test does not avoid the indeterminacy of the idea/expression dichotomy – it simply transposes it. Just as the idea/expression test may be manipulated by conceiving of the pro-

tected interest at different levels of abstraction, so too the *Whelan Associates* test may be manipulated by framing the "purpose" of a given work at differing levels of abstraction.

if the majority's division of Southco's rules from their expression were applied generally, large swaths of rule-based original works would be denied protection.

For example, Weight Watcher's point system for rating foods could be appropriated by Jenny Craig or any other competitor if it could be shown that Weight Watcher's point allotments followed predetermined formulae (based on calories per ounce or other considerations). Also, many compilations that would seem to pass *Feist's* low creativity threshold would be denied protection if they happen to be the product of predetermined rules. A list of restaurants broken down by price range, corking fees, handicapped accessibility, or any other rule-driven criteria would be excluded. On the other hand, a list of restaurants based on more "indeterminate" criteria, such as value or quality, would be protected. *See CCC Info. Servs.,* 44 F.3d at 70 (implying that all of these restaurant lists should be protected). This discrepancy strikes me as both unprincipled and unprecedented.

In this regard, the notion that "expression" should be limited to the literal elements of a given work has long been rejected in the context of aesthetic literary works. *E.g., Nichols,* 45 F.2d at 121 ("It is of course essential to any protection of literary property, whether at common-law or under the statute, that the right cannot be limited literally to the text, else a plagiarist would escape by immaterial variations."). More recently, the Second Circuit concluded this restrictive view would unduly limit protection for certain utilitarian works as well. As the court explained in *CCC Information Services v. Maclean Hunter Market Reports, Inc.,* 44 F.3d 61, 70–72 (2d Cir.1994), a broad rule limiting "expression" to the literal elements of a work would substantially deny protection to compilations, notwithstanding the ex-

press provision of the copyright statute conferring protecting such works. *See* 17 U.S.C. § 103(b). A compilation may be original in one of two ways (and often both): the author may contribute original written expression to the compiled facts, or the author may exercise creativity and originality in the selection and arrangement of the compiled facts. See *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 348–49, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). While facts may not be copyrighted, original selections and arrangements of facts are entitled to protection. *Id.* Thus, with respect to the selection and arrangement of non-copyrightable facts, "it is almost inevitable that the original contributions of the compilers will consist of *ideas,*" *CCC Info. Servs.,* 44 F.3d at 70 (emphasis in original), in the sense that the compilers' original contributions are not literally expressed in the copyrighted work. A literal interpretation of the idea/expression dichotomy – one which limits protection to the literal elements of any given work – would deny protection to this type of original contribution.

**II.**

Finally, the majority's flawed application of the idea/expression dichotomy is not saved by its reliance on the "short phrases" regulation. The regulation provides that "[w]ords and short phrases such as names, titles, and slogans" are "examples of works not subject to copyright and applications for registration of such works cannot be entertained." 37 C.F.R. § 201.1(a). According to the United States, which appeared as *amicus curiae* in this case, the Register of Copyrights, relying on this regulation, "routinely" and categorically denies protection to all part numbers, no matter how creative. While the majority both agrees with and defers to the government's position, I think this

position is wrong and that deference is inappropriate.

Apart from its claim regarding the practice of the Register of Copyrights, the government provides no support for its position that Southco's part numbers should be considered "short phrases" covered by § 202.1(a). In fact, the regulation does not appear to contemplate numerical symbols at all. As Southco persuasively argues, "the term 'phrase' ... is a grammatical term peculiarly adapted to copyrightable subject matter expressed in words." Furthermore, no published case has held that numbers should be considered "short phrases."

More important, even if Southco's part numbers were properly considered "short phrases," § 202.1(a) is best understood as a rough starting point for an originality analysis, not a shortcut for avoiding this analysis. Short phrases are typically unprotectable because they are either insufficiently independent or insufficiently creative or both, *see* 1 William F. Patry, *Copyright Law and Practice* 333 (1994), but it does not make sense to state categorically that no combination of numbers or words short enough to be deemed a "phrase" can possess "as least some minimal degree of creativity." *Feist,* 499 U.S. at 345, 111 S.Ct. 1282. In fact, the plain language of the regulation does not lend itself to such a construction. Section 202.1(a) states that "short phrases *such as* names, titles, and slogans" are not copyrightable. Thus, other short expressions dissimilar to names, titles, or slogans are not covered by the regulation. *See Applied Innovations, Inc. v. Regents of University of Minnesota,* 876 F.2d 626, 636 (8th Cir.1989) (holding that test statements were not "short phrases" under § 202.1 because they were not titles, names, or slogans). Therefore, "it would seem (notwithstanding [37 C.F.R. § 202.1(a) ] ) that even a short phrase may command copyright protection if it exhibits sufficient creativity." 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.01[B] (2000) (hereinafter *Nimmer on Copyright* ).

In fact, it appears that no court has relied on § 201.1(a) to hold that an otherwise original expression was uncopyrightable just because it was brief enough to be deemed a short phrase.[17] Rather, courts typically invoke § 201.1(a) in support of a determination that a particular work lacks any "creative spark," *Feist,* 499 U.S. at 345, 111 S.Ct. 1282, not as a substitute for that analysis. *E.g., Murray Hill Publ'ns, Inc. v. ABC Communications., Inc.,* 264 F.3d 622, 632–33 (6th Cir.2001) (citing § 201.1(a) in support of holding that radio DJ's tag-line, "J.P. on JR in A.M.," was "nothing more than a short phrase or slogan, dictated to some degree by the functional considerations inherent in conveying the desired information about McCarthy's morning show, i.e., whose morning show, what radio station, and what time."); *CMM Cable Rep. v. Ocean Coast Properties,* 97 F.3d 1504, 1519–20 (1st Cir.1996) (citing § 201.1(a) in support of holding two hackneyed phrases used in a radio show promotion were uncopyrightable because their "ordinary employment phraseology ... lacks the minimal level of originality"). Conversely, the *Applied Innovations* court refused to label short declarative statements "short phrases" where that court determined that the statements were suffi-

---

**17.** The only case which approaches such an anomalous result is *Matthew Bender & Co. v. West Publ'g Co.,* 158 F.3d 674, 683 (2d Cir. 1998), which held that West's decisions to shorten case names and capitalize certain letters in case titles were unoriginal and uncreative, and further cited § 202.1(a) for the proposition that even if these decisions were considered original, West's case titles would still not be copyrightable.

ciently original. *See* 876 F.2d at 634–36 (rejecting defendant's argument that simple statements used in psychological test were "short phrases" under § 202.1 and holding that test statements met the minimal originality requirement for copyright protection).

I further conclude that deference to the Register of Copyright's position is inappropriate. First, there is no plausible claim that *Chevron* deference applies here. Such deference may be appropriate where the Register of Copyrights is empowered to promulgate regulations, *see Cablevision Systems Development Co. v. Motion Picture Ass'n of America, Inc.,* 836 F.2d 599, 608 (D.C.Cir.1988), and *Satellite Broadcasting and Communications Ass'n of America v. Oman,* 17 F.3d 344, 347 (11th Cir.1994), but here the government's position rests largely on two letter decisions denying registration to works of unrelated third parties. Even if we were considering an infringement action involving one of the works at issue in either of those letters, we would still review the Register's resolution of legal issues (such as copyrightability) *de novo.*[18] *A fortiori,* the Register's opinion concerning the copyrightability of these other works cannot limit our consideration of the issue in this case. *Chevron* deference is inapplicable where Congress has not delegated authority to the agency to make rules or decisions carrying the force of law. *United States v. Mead,* 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

Of course, agency interpretations of questions of law may still have the power to persuade even if they lack the power to control. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The measure of *Skidmore* deference varies with the circumstances, including "the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness of the agency's position." *Mead Corp.* 533 U.S. at 227–228, 121 S.Ct. 2164 (internal citations omitted). Without exhaustively discussing these factors, it seems clear to me that the level of deference due to the Register of Copyright's position in this case is minimal at best.

Most importantly, I am far from convinced that the Register of Copyrights "routinely" rejects part numbers, no matter how creative, solely on ground that they constitute "short phrases." The government's claim in this regard is either overstated or under-supported. The government offers only two letter decisions from the Examining Division of the Copyright Office as evidence of this supposedly routine practice. While both concern part numbers, and both rely on § 202.1(a), there is no indication that the numbers at issue in those cases involved any creative expression at all. In fact, the more lengthy of the two letters cites *Toro* in support of its contention that the parts numbers in the applicant's parts price list lacked originality. As discussed above, *Toro* made clear that sufficiently creative parts numbers were entitled to protection. These letter decisions are hardly models of clarity, making it difficult to discern the reasoning of the Examining Division in each case, much less to extrapolate from these letters to confidently state that the

**18.** A certificate of registration constitutes *prima facie* evidence of the validity of the copyright and ownership of the registered work in a subsequent judicial proceeding commenced within five years of the copyright's first publication. 17 U.S.C. § 410(c); *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 290–91 (3d Cir.1991). However, the Register's decision to deny registration has no legal force whatsoever. Further, the rebuttable presumption that attaches to registered works is an *evidentiary* rule – it has no apparent application to legal issues such as copyrightability. *Atari Games Corp. v. Oman,* 888 F.2d 878, 887 (D.C.Cir.1989) (Silberman, J., concurring).

Copyright Office takes the categorical position advanced by the United States.[19] It seems just as likely to me that in each case the Examining Division was not denying copyright protection solely because the numbers were "short phrases," but because they lacked sufficient creativity to warrant copyright protection. Indeed, I suspect that the position advanced to us by the Register of Copyrights may have been adopted for the first time in this litigation. If so, it would of course be entitled to no deference whatsoever. *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

The lack of formality and care involved in the agency's determination also counsel against deference here. As the government candidly admits, the two letter decisions in question were written by a staff attorney for the Examining Division of the Register of Copyrights in response to the disappointed applicant's appeal of an earlier denial of registration. A second appeal before an Appeals Board was available, but apparently not taken, in either case.[20] Neither of the letter decisions explain why parts numbers should be considered "short phrases" covered by the regulation. Furthermore, the shorter of the two decisions consists largely of boilerplate—the phrase "part number" does even appear in the body of the decision—while the longer decision misrepresents several relevant cases discussed earlier, including *American Dental* and *CCC Information Services.*

Finally, for the reasons discussed above, I find the Register's position wholly unconvincing. It may well be that short expressions must hurdle a slightly higher creativity bar than longer works. *See* 1 *Nimmer on Copyright* § 2.01[B] at 2–17; *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 908 (3d Cir.1975) (citing *Nimmer* ). This is sensible; otherwise relatively mundane phrases or slight variations on common expressions might be taken out of the public domain. However, the majority is incorrect insofar as it contends that Southco's part numbers, even if quite creative, are unprotectable simply because they are short.

For the above reasons, I respectfully dissent and would reverse the District Court's grant of summary judgment to the defendant.

---

**19.** In this regard I note that my own search of the LEXIS database of copyright registrations revealed numerous registrations seemingly indistinguishable from the subject matter denied in the two letter decisions offered in this case by the government as evidence of the Register's "routine" practice. One letter denied registration to a "parts price list" (including, apparently, part numbers) while the other denied registration to six discrete part numbers. Yet my research revealed numerous registered price lists, such as the "Burco, Inc. Parts numbers and price list" and the "Basco price list." I also found numerous registrations of part number lists, such as "Computerland InfoSystems – part number configuration master list," as well as many part number cross-reference, comparison, conversion, or update lists, such as "5046/5335 developer part number is chang-

ing," "Piping products, comparative product part numbers: bull. 8227," and "P E M – part number conversion table for P E M fastener assemblies with metric threads." None of these registrations contain any indication that the registration is limited to the compilation of the included material.

I have not actually inspected the registered works listed above; my research has been limited to the information available for each registered work on the LEXIS database. Nonetheless, I think this sampling supports my suspicions that the Register of Copyright's position is not nearly as longstanding or consistent as it claims.

**20.** The government has offered no decision of this higher authority supporting its position here.